HOUSTON, EAST & WEST TEXAS RAILWAY COMPANY v. MARGARET McHALE ET AL.

Decided November 5, 1907.

**1.—Master and Servant—Servant on Duty.**

The fact that a servant was not in the active discharge of his duties . at the precise time he was injured by the negligence of the master, will not relieve the master from liability. Where the foreman of a switch crew was killed by a door falling from a moving freight car while such foreman was reclining upon the ground near the track waiting for the train to move out in order that he might resume his duties, the relation of master and servant was not interrupted or suspended during such interval, and the master owed the servant the duty of exercising ordinary care to prevent injuring him.

**2.—Negligence—Anticipated Injury.**

It is not essential to a master's liability for injury to his servant that he should have anticipated that an injury would occur in the exact way or in the same degree in which it did in fact occur. It is sufficient that he should reasonably have anticipated that some injury of like character would result from his negligence.

**3.—Assumed Risk—Contributory Negligence.**

The foreman of a switch crew who was killed by a door falling from a freight car in a moving train while said foreman was sitting or reclining near the train, was not guilty of contributory negligence in assuming said position near the track, nor did he assume the risk of a door falling from the train. He had a right to rely upon the master's having performed his duty to properly inspect and repair the cars in said train.

**4.—Deposition—Partial Reading of—Practice.**

It is not good practice to permit a party to a suit to withhold from the jury portions of the testimony of witnesses whose depositions have been taken by such party, when the testimony withheld is not subject to any valid objection.

**5.—Practice—Admission and Withdrawal of Testimony.**

Where testimony was admitted over defendant's objection and afterwards withdrawn from the jury with the permission of the court, it can not be presumed that the defendant was injuriously affected thereby in the absence of anything in the testimony that would tend to influence or excite the minds of the jury, and there was no reason to suppose that the jury considered said testimony.

**6.—Assumed Risk—Dangerous Position—Expert Testimony.**

Whether or not a position occupied by an employee at the time he was injured was a dangerous one, is ordinarily not a subject for expert testimony. It should be left to the jury to determine from all the circumstances in evidence.

**7.—Negligence—Charge.**

In a suit for personal injury, charge of the court considered, and held not subject to the objection that it assumed that defendant was guilty of negligence.

**8.—Assumed Risk—Charge.**

A servant assumes the risk of defective appliances if such defects are not chargeable to the master's negligence. Charge considered, and held inaccurate, but not cause for reversal.

**9.—Contributory Negligence—Assumed Risk.**

When one is consciously negligent in the doing of an act or in the failure to act, he might be said to assume the risk of such negligence; and one may be so careful as to be entirely free from negligence, and yet because of the danger necessarily incident to the work, he can not recover because he assumed the risk of injury.

**10.—Damages, not Excessive.**

A verdict for $16,500 is not excessive in a suit by a widow and children for the death of their husband and father where the deceased was forty-three years old and was earning $100 per month, the widow was forty-two years old and there were seven children between the ages of three and thirteen.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelley & Wolters,* for appellant.—The master is not liable for an injury to the servant, who, while not actually engaged in the furtherance of the master's service, but for his own pleasure and purposes, occupies a position involving an unusual degree or probability of danger that would not exist as an ordinary incident to the performance of the master's work. Texas & N. O. R. R. Co. v. Skinner (Tex. Civ.), 23 S. W. Rep., 1001; Texas Cen. R. R. Co. v. Waller, 66 S. W. Rep., 466; 20 Amer. & Eng. Enc. of Law (2d ed.), pp. 57, 78; Shearman & Redfield on Negligence (5th ed.), sec. 190; Keenan v. N. Y., etc., Ry. Co., 2 Misc. N. Y., 34; Baker v. Chicago, R. I. & P. Ry. Co., 95 Iowa, 163, 63 N. W., 667; Ellsworth v. Metheney (U. S. Cir. Ct., Ohio), 104 Fed. Rep., 119, 51 L. R. A., 389; Mitchell-Tranter Co. v. Ehmet (Ky.), 55 L. R. A., 710; Brown v. Byroads, 47 Ind., 435; Belford v. Canada Shipping Co., 35 Hun, 347; Wright v. Rawson, 52 Iowa, 329; Cowhill v. Roberts, 71 Hun, 127, 24 N. Y. Sup., 533; Woods' Law of Master and Servant, sec. 402; Bailey Master's Liability for Injury to Servant, pp. 18, 19 and 22.

The extent of the master's duty in regard to the place in which the servant is to work is the use of ordinary care to maintain a reasonably safe place, and in the absence of proof: (1) That such place is not reasonably safe in view of the duties to be performed; and (2) that the master has failed to exercise ordinary care to that end, there is no such negligence as will sustain a verdict against the master. Bering Mfg. Co. v. Peterson, 67 S. W. Rep., 134; International & G. N. Ry. Co. v. Williams, 82 Texas, 345; International & G. N. Ry. Co. v. Bell, 75 Texas, 52; Houston & T. C. Ry. Co. v. Oram, 49 Texas, 341.

Assuming that there was evidence of defective appliances, as alleged, yet the test of proximate cause which is necessary to constitute actionable negligence and liability for injuries to the servant, is whether a person of ordinary prudence in defendant's situation might reasonably have expected such an injury to a servant in the line of McHale's employment as likely to ensue from the alleged defective appliance. Texas & Pacific Ry. Co. v. Bigham, 90 Texas, 225; Texas & Pac. Ry. Co. v. Reed, 88 Texas, 448; Seale v. Gulf, C. & S. F. Ry. Co., 65 Texas, 279; 16 Amer. & Eng. Enc. of Law, pp. 436 et seq. (1st ed.)

A practical switchman who enters the service of a railroad company for the purpose of handling and switching cars, according to the methods and rules prevailing in the service of the railway company, is held in law to understand the methods, customs and practices of the service and the ordinary dangers incident thereto; and in the event he should receive injuries while voluntarily occupying some position incident to the performance of his duties, resulting from dangers which he knew of, or by the exercise of ordinary care would have known, he will be held to have assumed the risk of such injury and the master is not liable therefor. Galveston, H. & S. A. Ry. Co. v. Gormley, 91 Texas, 401; Pilkinton v. Gulf, C. & S. F. Ry. Co., 70 Texas, 230; Missouri Pac. Ry. Co. v. Galbreath, 66 Texas, 528; Missouri Pac. Ry. Co. v. Watts, 63 Texas, 552; Missouri Pac. Ry. Co. v. Somers, 71 Texas, 701; Galveston, H. & S. A. Ry. Co. v. Lempe, 59 Texas, 22; Texas & Pac. Ry. Co. v. Bradford, 66 Texas, 733; Galveston, H. & S. A. Ry. Co. v. Drew, 59 Texas, 10; Rogers v. Galveston City Ry. Co., 76 Texas, 505; Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 628; Texas & Pac. Ry. Co. v. French, 86 Texas, 98; Bailey on Master's Liability for Injury to Servants, pp. 458 et seq.; Wood on Master and Servant, sec. 326.

A switchman who, after causing a train to be made up, and while waiting for the same to be moved from the yards, lies down upon the ground in close proximity to one of the cars in such train, when he knows, or by the exercise of ordinary care would know, that there was a probability of doors falling from a car and injuring him, and who is thereafter injured by reason of a door falling from such car by reason of the sudden motion of the train, is to be deemed guilty of contributory negligence precluding recovery for such injury. Houston & T. C. Ry. Co. v. Conrad, 62 Texas, 628; Missouri Pac. Ry. Co. v. Williams, 75 Texas, 4; Missouri Pac. Ry. Co. v. Porter, 73 Texas, 307; Sabine & E. T. Ry. Co. v. Dean, 76 Texas, 74; Mis-

souri Pac. Ry. Co. v. Foreman, 73 Texas, 314; Galveston, H. & S. A. Ry. Co. v. Drew, 59 Texas, 13; Wharton on Negligence, 426; Brown v. Byroads, 47 Ind., 435.

When the court has admitted improper evidence before the jury for their consideration, and they have retired for the night and reconvened the following day, to resume the hearing, it is then too late to cure the error of admitting such evidence, by permitting the counsel who introduced it to then withdraw it from the jury, the inevitable presumption is that the evidence being improper, its admission for the consideration of the jury has made a wrong impression upon their minds, to the prejudice of the other party. Gulf, C. & S. F. Ry. Co. v. Levy, 59 Texas, 551; McCuley v. Long & Co., 61 Texas, 74; Tucker v. Hamlin, 60 Texas, 171; Smyth v. Caswell, 67 Texas, 576; Texas & Pac. Ry. Co. v. Boggs (Texas Civ. App.), 30 S. W. Rep., 1090.

The court erred in refusing to admit the testimony of the witness, Lee Langston, offered by the defendant, for the purpose of showing that, in his opinion as an expert witness, fully qualified to testify on the subject, the position occupied by the deceased, J. J. McHale, at the time of his injury, was a dangerous position. Armediaz v. Stillman, 67 Texas, 463; Ft. Worth & D. C. Ry. Co. v. Thompson, 75 Texas, 503; Austin Rapid T. Ry. Co. v. Groethe (Texas Civ. App.), 31 S. W. Rep., 197; Gulf, C. & S. F. Ry. Co. v. Colbert (Tex. Civ. App.), 31 S. W. Rep., 332; San Antonio & A. P. Ry. Co. v. Brooking (Tex. Civ. App.), 51 S. W. Rep., 540; International & G. N. Ry. Co. v. Collins, 75 S. W. Rep., 814.

The servant is held in law to know and to have assumed the risk of danger from unsafe and defective appliances unless such conditions are due to negligence on the part of the master. The instruction "that McHale, in taking the position he did, did not assume risk of any danger from the door falling off because of unsafe and defective appliances, if they were, unless he knew thereof, or in the exercise of ordinary care must necessarily have known thereof," is erroneous in that it implies defendant's liability for such defects, regardless of its negligence in permitting the same. Gulf, C. & S. F. Ry. Co. v. Hohl (Tex. Civ. App.), 29 S. W. Rep., 1132; Missouri, K. & T. Ry. Co. v. Thompson (Tex. Civ. App.), 33 S. W. Rep., 719. Master's duty: Bering Mfg. Co. v. Peterson, 67 S. W. Rep., 134; International & G. N. Ry. Co. v. Williams, 82 Texas, 345; International & G. N. Ry. Co. v. Bell, 75 Texas, 52; Pierce on Railroads, 370. On assumed risk from defects: Missouri P. Railway Company v. Somers, 78 Texas, 442; Taylor B. & H. v. Taylor, 79 Texas, 112; Green v. Cross, 79 Texas, 132; Texas & Pac. Ry. Co. v. Bradford, 66 Texas, 735.

The rule that the servant does not assume the risk of danger from unsafe places or appliances, due to negligence of the master, does not have reference to such dangers as result from positions or attitudes voluntarily occupied by him for his own purposes, and which are not necessary nor reasonably incident to the performance of his work as a servant; and the instruction "that McHale in taking the position he did, did not assume the risk of any danger from the door falling

off because of unsafe and defective appliances," etc., is erroneous in applying this doctrine, regardless of the question whether the situation of the deceased was such under the circumstances as to bring him within the protection of this presumption as being a servant in the performance of his duty. Texas Central Ry. Co. v. Waller, 66 S. W. Rep., 466; 20 Amer. & Eng. Enc. of Law (2d ed.), pp. 57, 78; 1 Shearman & Redfield on Neg. (5th ed.), sec. 190; Texas & N. O. R. R. Co. v. Skinner (Tex. Civ.), 23 S. W. Rep., 1001; Ellsworth v. Metheney (U. S. Cir.), 104 Fed. Rep., 119; Brown v. Byroads, 47 Ind., 435.

A verdict in a case of injury resulting in death for a sum greater than the actual pecuniary injury caused by the act complained of, according to the evidence of pecuniary aid which the plaintiffs would probably have derived from deceased, is deemed in law excessive, and when it is apparent from the large amount of such verdict that the jury were probably·influenced by prejudice, passion or undue sympathy, such verdict is fatally defective, and should be set aside. Rev. Civ. Stats. of Texas, art. 3027; Southern Cotton Press Company v. Bradley, 52 Texas, 587; Houston & T. C. Ry. Co. v. Cowser, 57 Texas, 293; International & G. N. Ry. Co. v. Kindred, 57 Texas, 491.

*Lovejoy & Parker,* for appellees.

PLEASANTS, CHIEF JUSTICE.—On August 25, 1905, John J. McHale, while in the employment of defendant as foreman of a switching crew, engaged in switching cars in appellant's yard at Houston, received injuries to his person by being struck by a door which fell from one of the cars in said yard, and as a result of said injuries his death occurred in a few minutes. This suit was brought by appellee, Margaret McHale, the widow of said John McHale, for herself and as next friend of seven minor children of the deceased, named in the petition, to recover the damages sustained by herself and said children by reason of the death of said McHale, which they allege was caused by the negligence of the appellant. The grounds of negligence alleged are: First, that said car and door were not provided with proper and necessary appliances to hold the door in position, or if provided with such appliances, then the same were in an unsafe and defective condition. Second, that the employes in charge of the train of which said car was a part set the same in motion with a sudden jerk and thereby imparted to said car an unnecessary jar which caused the door to fall.

The defendant answered by general demurrer and general denial and by pleas of assumed risk and contributory negligence, and further pleaded that if defendant was negligent as charged by plaintiff, such negligence was not the proximate cause of the injuries received by McHale and defendant can not be held liable therefor.

The trial in the court below resulted in a verdict and judgment in favor of plaintiffs in the sum of $16,500.

The only issue of negligence on the part of appellant submitted to the jury was predicated upon the first ground of negligence alleged in the petition. The evidence shows that at the time of his injury

deceased was in the employment of defendant as foreman of a switching crew, and on the day he was injured and during the time immediately preceding the accident was engaged in switching cars and making up trains in defendant's yard in the city of Houston. The crew which was working under his direction consisted of an engineer, fireman and two brakemen. There were a number of tracks in the yard and one of them was occupied by a train which had just been made up by McHale's crew and was about ready to start out on the road. This train was composed of forty or fifty freight cars. After this train was made up the work of the switching crew had to be suspended until the train pulled out, as the next work to be done required, the use of the track upon which said train was standing. When this condition arose McHale informed his men that the work would be suspended until the train before mentioned moved out. At the time this occurred deceased was near the switch engine, which was on a different track from that on which the out-going train was standing, and about 300 feet distant therefrom. After giving these directions he walked over to the train and sat down near the track in the shade cast by a large boxcar in said train. He was soon joined there by C. F. Strange, fireman of the switch engine, and the two sat there engaged in conversation for a short time. They were expecting the train to start at any time. Just before the accident occurred Strange got up and started to his engine. After going a short distance he looked back and saw McHale reclining on his elbow with his back to the train. In a few seconds after this the train started and he heard an alarm given by the brakeman on the train for the purpose of notifying the crew that an accident had occurred. He went immediately to McHale and found that the door of the boxcar, by which he was reclining, had fallen off the car and struck him upon the head and breast. McHale was unconscious when Strange reached him and died in about ten minutes. The brakeman upon the train saw the door fall from the car and strike McHale. He tried to warn him but could not do so in time to prevent the accident. The car from which the door fell belonged to a connecting carrier of appellant, and when it came into the yard the day before the door was off and lying on the floor of the car. This door was hung to the car at the top by fasteners which worked on rollers placed in a gutter-shaped track. This track ran back from the opening for a distance equal to the width of the door and was supported by brackets. At the end of the track a block was fastened to the car to prevent the door from sliding off when it was pushed back in opening it. When this car was examined on the day it came into the yard the rollers were gone, several of the brackets which supported the track were missing, and the track was sagged down to a considerable extent, and the block at the end of the track was partially gone and the portion which remained was rotten. The inspector marked the car "bad order" and directed the car repairer to fix it. The car repairer testified that he got rollers and replaced the door on the track and drove some nails in the block at the end of the track. He did not raise the sagged places in the track or put any brackets on to replace those which were missing, and he testi-

fied that the nails he drove in the stop block did very little good, because of the decayed condition of the portion of the block that was left. The brakeman who saw the accident testified that just as the train started he saw the door fall and strike McHale, and that it fell down from the top, the bottom edge striking the deceased across the face and breast. The marks upon deceased show conclusively that the door struck him in this way. There is no evidence that the train was started with any unusual jerk.

We conclude from this testimony that the fall of the door was due to the defective condition of its fastening; that these defects were known to appellant's employes charged with the duty of discovering and repairing them; that said employes were guilty of negligence in failing to make the proper repairs, and such negligence was the proximate cause of McHale's death.

The first assignment of error presented by appellant is as follows: "The court erred in overruling the motion for new trial on the ground that the verdict of the jury was contrary to the law and the evidence in this, that, according to the undisputed evidence, the deceased, J. J. McHale, at the time and place of his injury was not in the performance of any duty to defendant, as a servant, and was not occupying any position or attitude necessary or incident to the performance of his duty to defendant, as a servant, and was not injured as a proximate result of defendant's failure to furnish reasonably safe appliances and machinery, or a reasonably safe place in which for him to work as a servant."

The fact that the deceased was not in the active performance of the duties of his employment at the time he was injured can not relieve appellant from liability. Pretermitting for the present a discussion of the issues of assumed risk and contributory negligence, the evidence shows that deceased was rightfully in appellant's yard and near its track, and if not negligent himself in assuming the position he did near said track and he did not assume the risk of being struck by the falling car door, appellant owed him the duty of exercising ordinary care to prevent injuring him. St. Louis, A. & T. Ry. Co. v. Welch, 72 Texas, 302; East Line & R. R. Ry. Co. v. Scott, 71 Texas, 710.

In the first case cited the plaintiff, who was foreman of a bridge gang, was asleep at the time of his injury in a car on a side track provided by the company for that purpose. While thus resting he was injured by the negligence of other employes of appellant, who were operating a train over the road. Under these facts our Supreme Court held that plaintiff was on duty at the time he was injured and therefore the doctrine of. fellow servants, as then enforced in this State, was applied and recovery denied on the ground that the injury was due to the negligence of a fellow servant. In discussing the question in that case, Judge Gaines says: "He was liable to be called upon at any moment to go out with the gang upon duty upon the road. We think he must be held to have been upon duty at the time he received the injury. That the accident occurred when he was resting from his labors we think makes no difference. He was subject to the call of the company at the time, and his case differs

from that of other servants who engage for certain hours of employment and who are injured during the interval in which the master has no claim upon their services."

If in the case cited the plaintiff was in the performance of his duty at the time he was injured, the deceased in this case while waiting beside the track upon which he was to resume work must be held to have been in the performance of duty and appellant would be liable if it failed to use ordinary care to render the place in which he was so waiting reasonably safe and he was injured as a result of said negligence.

The proposition and argument of appellant submitted under this assignment are predicated upon the assumption that the condition of the car door only rendered it unsafe to a person occupying the position in which deceased placed himself, which appellant claims was one of unusual danger. We do not think this assumption finds any support in the evidence. Of course, the accident would not have occurred just as it did but for the position in which deceased had placed himself. But the size and weight of the car door was such that appellant should reasonably have anticipated that its fall might seriously injure anyone near enough to the track to be struck by it in falling, and could reasonably anticipate that employes working in said yard would, in the performance of the duties of their employment, be required to pass or be in such close proximity to said car that they might be struck by the falling door. It was not essential to appellant's liability that it should be held to have reasonably anticipated that an injury should occur in the exact way or in the same degree as that which did occur, but only that it should reasonably have anticipated that some injury of like character might have resulted from the failure to use ordinary care to properly secure the door.

It is well enough just here to dispose of the question of assumed risk and contributory negligence raised by subsequent assignments of error. The evidence shows that it was a usual occurrence for car doors to fall from cars which were being handled in appellant's yard at Houston, and that the deceased had been working in said yard for such a length of time that by the use of ordinary care in the performance of his duties he should have known that doors were likely to fall from cars which were being handled in said yard. There is, however, no evidence that it was a usual occurrence for trains prepared and ready to be sent out on the road to contain cars with defective door fastenings or with doors that were likely to fall off when the train was put in motion. The rules of the service required that cars brought into the yard should be inspected and made reasonably safe before they were sent out in a train, and there is nothing in the evidence to indicate that the deceased had any reason to think that this duty had not been performed by those charged therewith in reference to the train in question. The evidence further shows that the position occupied by the deceased at the time of the accident was not necessarily dangerous. He was in a half sitting or reclining position resting upon his elbow, but his proximity to the train was not such as to place him in any danger from its movement

if the door had not fallen. Upon these facts the jury were justified in the finding that the injury to the deceased was not the result of any risk assumed by him and was not contributed to by any want of ordinary care on his part. These conclusions dispose of the questions presented by the first, third, fourth and fifth assignments and none of said assignments can be sustained.

The second assignment predicates error upon the refusal of the trial court to grant a new trial on the ground that the alleged negligence of appellant in failing to provide proper fastenings for the car door was not the proximate cause of the injury to deceased. Under this assignment it is contended that the appliances by which the door was fastened to the car were such as were in ordinary use by railroad companies and were in good condition at the time of the accident. From our conclusions of fact before set out it follows that this assignment can not be sustained. The evidence warrants, if it does not compel, the finding that the appliances mentioned were not in good condition and that this was the proximate cause of deceased's injury.

The sixth assignment complains of the ruling of the trial court in permitting the appellee to introduce in evidence a part of the answers of her witness, C. W. Bruton, and not requiring her to introduce the whole of said answers.

While the portion of the answer which appellee declined to introduce was not a necessary part of the answer to the question propounded to the witness, it was entirely germane thereto and in no sense unresponsive, and it is not good practice to permit a party to a suit to thus withhold from the jury portions of the testimony of witnesses whose depositions have been taken by such party when the testimony so withheld is not subject to the objection that it is not responsive to the question propounded. This ruling of the trial court, however, could not have harmed appellant, because the testimony so withheld related solely to the position occupied by the deceased at the time he was injured and this was shown by other undisputed evidence. In addition to this, the testimony of this witness on this point was put in evidence by the appellant and it would be unreasonable to presume that any issue could have been raised in the minds of the jury as to the position occupied by the deceased at the time he was injured, and therefore no possible harm could have resulted from the appellant being forced to make the witness Bruton its witness in order to obtain the benefit of his testimony on this point.

The seventh, eighth and ninth assignments complain of the ruling of the trial court in admitting in evidence, over the defendant's objection, the testimony of three witnesses for plaintiff to the effect that in the opinion of each of such witnesses the door of the car would not have fallen if it had been provided with proper fastenings and such fastenings were in good condition, and afterwards permitting plaintiff's attorney to withdraw such testimony from the jury. If it be conceded that the evidence was improperly admitted over the objections interposed by defendant, as it was subsequently withdrawn from the consideration of the jury we can not presume that the jury were influenced thereby. Other evidence introduced upon this issue

was amply sufficient to sustain the verdict. There was nothing in the character of this testimony that would tend to influence or excite the minds of the jury, and there is no reason to suppose that it was given any consideration by them after it was withdrawn. Smyth v. Caswell, 67 Texas, 576, 577.

The tenth and eleventh assignments complain of the refusal of the trial court to permit the defendant to introduce the testimony of the witnesses Langston and Runnells to the effect that in the opinion of such witnesses as experienced railroad operatives the position occupied by the deceased at the time of his injury was dangerous. This testimony was objected to by the plaintiff on the ground that the question was not a proper subject for expert testimony and to permit witnesses to express their opinion upon this subject would be an invasion of the province of the jury, it being for the jury to say whether, under the circumstances shown by the evidence, the position occupied by the deceased was dangerous. We think these objections to the testimony were properly sustained and the assignments should be overruled.

The twelfth assignment complains of the following paragraph of the court's charge:

"The said McHale upon entering and so long as he continued in the service assumed the risks which were ordinarily incident to the service in which he was engaged; risks which were obvious and risks which were known to him or would necessarily have been known to him by the exercise of ordinary care in the discharge of his duties. He did not, however, assume risks which arose from the negligence of defendant until he became aware thereof, or in the exercise of ordinary care, in the discharge of his duty, would necessarily have become aware thereof; and he had a right to assume that the defendant would use ordinary care in the performance of its duty until he knew, or in the exercise of ordinary care would have known, the contrary."

The objection urged to this charge is that it assumed that there was negligence on the part of the defendant. We think the objection hypercritical even when this paragraph of the charge is considered without regard to other portions of the charge. The charge pointedly submits the issue of defendant's negligence to the jury and makes plaintiff's right to recover depend upon a finding by the jury that the death of the deceased was caused by the defendant's negligence and they could not have understood or inferred from the charge that the trial judge had any opinion upon this issue.

From what has been said in discussing previous assignments it follows that the thirteenth assignment can not be sustained. The portion of the charge complained of by this assignment is as follows:

"That if you shall believe from a preponderance of the evidence that the obligation which the defendant was under to use ordinary care to furnish McHale and its other employes engaged in similar service in its yard a reasonably safe place in which to work, required that defendant and its servants and employes, entrusted with the duty in that regard, should use ordinary care to provide the doors of cars operated by it in its yard with reasonably safe appliances to hold

them in position, and such care to keep them in reasonably safe condition for such purpose; and you believe that the appliances for holding the said door in position were in an unsafe and defective condition, substantially as alleged in plaintiff's petition, and that such condition, if it existed, either alone or together with leaving the door open or unfastened, was the proximate cause of the door falling and striking and killing McHale; and you believe that defendant in permitting the said appliances to be in such condition, if he did, should and would in the exercise of ordinary care have foreseen the injuring or killing of McHale or some other employe engaged in similar service, as a result that might occur from such condition, if any, under the circumstances of the case, and have made provision against such result; and you believe that defendant in permitting such condition of the appliances to exist, if it did, was guilty of 'negligence' and that such 'negligence' was the proximate cause of McHale's injury and death; and you do not believe that said McHale was guilty of contributory negligence, or assumed risk, which caused his death, or that his death was the result of accident under succeeding paragraphs of this charge, you will return a verdict for plaintiffs, but unless you so find, you will return a verdict for defendant."

The objection urged to this charge is that it was error to instruct the jury that defendant was required to use ordinary care to furnish the deceased with a reasonably safe place in which to perform his work, because the evidence shows that the deceased was not in the performance of any service for defendant at the time he was injured and therefore the instruction was not applicable to the case made by the evidence. As we have before said, we think this obligation of the master to use ordinary care to furnish his servant a reasonably safe place in which to work is not suspended during every interval of time in which the servant is not actually engaged in performing work. When the servant is on duty it matters not whether he is actually engaged in work, or is waiting at the proper place to begin his work when occasion requires. It is in either case the duty of the master to use ordinary care to keep the place in which he is required to perform his work reasonably safe.

The fourteenth assignment complains of the following paragraph of the charge:

"Or, if you believe when ordinary care is used to provide car doors with reasonably safe appliances for holding them in position, and such care is used to keep such appliances in reasonably safe condition for such purpose, and such cars are handled with ordinary care, that doors are nevertheless likely to fall off, and you believe the door fell off under such circumstances, then McHale in placing himself in a position where he could be struck by the falling door assumed the risk of injury and death therefrom, and you will likewise return a verdict for defendant; but in this connection you are charged that McHale in taking the position he did, did not assume the risk of any danger from the door falling off because of unsafe and defective appliances, if they were, unless he knew thereof; or in the exercise of ordinary care must necessarily have known thereof, and before you can find for the defendant in such case, you must believe that

he knew, or in the exercise of ordinary care would necessarily have known of the unsafe and defective condition of the appliances, if such condition existed; but if you so find, you will likewise return a verdict for defendant. Or if you believe the falling of the door was the result of 'accident,' you will also return a verdict for defendant."

The objection to the charge is that it was error to instruct the jury that McHale in taking the position he did, did not assume the risk of danger from the door falling off because of defective appliances unless he knew of such defects, or in the exercise of ordinary care would necessarily have known thereof. This instruction abstractly considered is not accurate, because the servant does assume the risk of defective appliances if such defects are not chargeable to the master's negligence. In previous portions of the charge the court had clearly and explicitly instructed the jury that plaintiff could not recover unless the jury found from the evidence that the fall of the door was the result of improper fastenings and that the defendant in permitting such condition of the appliances to exist was guilty of negligence, and that unless both of these facts were found by the jury they should return a verdict for the defendant. Under this charge the jury in returning a verdict for plaintiff must have found that the defendant was negligent in not having the door properly fastened. Having reached this conclusion when they came to consider the defense of assumed risk, they were not misled by the charge complained of because having found that the defective condition of the appliances were due to the negligence of the defendant, the deceased would not have assumed the risk of danger from such defects unless he knew of them or would have known of them by the exercise of ordinary care, and this charge furnished sufficient instruction to enable the jury to understand and determine the issue of assumed risk. Texas & N. O. Ry. Co. v. Black, 44 S. W. Rep., 675; International & G. N. Ry. v. Trump, 97 S. W. Rep., 466.

The trial court did not err in refusing special instruction No. 4, requested by defendant, the refusal of which is complained of by the fifteenth assignment. The instructions contained in the refused charge had already been given by the court and should not have been repeated.

The sixteenth and seventeenth assignments complain of the refusal of the trial court to give special instructions requested by the defendant submitting the issue of assumed risk. We hardly think the issue of assumed risk was raised by the evidence in this case. It is often difficult to distinguish between assumed risk and contributory negligence when the law applicable to these distinct defenses is sought to be applied to the facts of a particular case. Whenever one is consciously negligent in the doing of an act or in the failure to act he might be said to assume the risk of such negligence; but this is not assumed risk, as that term is used in the rule of law which exempts the master from liability for injury to the servant due to a cause ordinarily incident to the service in which he is engaged, or from injury due to the dangerous condition surrounding the service of which the servant had notice or in the exercise of ordinary care should have known. One may be so careful as to be

entirely free from negligence in the manner in which he performs his work and yet because of the danger necessarily incident to the work or due to conditions within his knowledge or of which he must have known, had he exercised ordinary care, he can not recover for injuries while in the performance of such work on the ground that he has assumed the risk of such injuries. If the issue of assumed risk was raised by the evidence it was properly submitted to the jury by the charge given by the court and there was no error in refusing instructions requested by the defendant upon said issue.

The charge of the court properly submitted the issue of contributory negligence and therefore it was not error to refuse the special instruction requested by defendant submitting such issue, and the eighteenth assignment which predicates error upon the refusal of such instruction can not be sustained.

There is no merit in the nineteenth assignment which assails the verdict on the ground that it is excessive. The deceased was 43 years old at the time of his death and was earning $100 per month. The widow was 42 and the seven minor plaintiffs are of ages from 3 to 13 years respectively. The testimony shows that the deceased was sober and industrious and was affectionate and attentive to his wife and children. We can not say that the amount of the verdict is so large as to indicate that the jury were influenced by passion, prejudice or other improper motive.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*

Writ of error refused.