MARKOVICH, Respondent, vs. SCHLAFKE and another, Appellants.

*February 9—March 7; 1939.*

640

For the appellants there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge.*

For the respondent there was a brief by *Eberlein & McCarthy* of Shawano, and oral argument by *M. G. Eberlein.*

NELSON, J. The only errors assigned on this appeal are: (1) That the trial court erred in denying defendants' motion for judgment in their favor notwithstanding the verdict, and (2) that the trial court erred in refusing to grant their motion to change the answer to the fifth question of the special verdict, which related to the assumption of risk, from "No" to "Yes," and for judgment in their favor upon the verdict as so changed. Both assignments of error involve the same contention. That contention is that the accident

was caused by the defendant's going to sleep while operating his automobile and that, under the circumstances, the plaintiff must be held, as a matter of law, to have assumed that risk. It is not disputed that the sole cause of the accident was Schlafke's going to sleep while operating his car.

The material facts are not in dispute. The plaintiff and the defendant, Schlafke, both resided at Wabeno, in this state. The plaintiff was a blacksmith. Schlafke was engaged in the bakery business. April 7th was spring election day. At about 8 o'clock in the evening of that day the plaintiff went to the tavern of one Ben Slowe, where shortly thereafter he began to play cards. There was quite a large crowd in the tavern. Quite a few drinks were indulged in by those present. The plaintiff first observed the defendant, Schlafke, in the tavern at about 12 o'clock. Schlafke had a few drinks but none of the witnesses who testified considered that he was intoxicated. Shortly before 4 o'clock in the morning, according to the plaintiff's testimony, Schlafke proposed that the plaintiff accompany him in his automobile to Antigo where he had some business requiring his attention. Schlafke testified that the proposed trip was undertaken "for some good times." The plaintiff consented to accompany the defendant and they walked a short distance to the defendant's garage where his automobile was kept. From Wabeno they proceeded to another tavern located at Windfall. That tavern was closed. They then drove on to another tavern which was also closed. From there they proceeded to a third tavern known as the Porcupine Inn. The bartender there was a friend of the plaintiff, and the plaintiff and Schlafke were each served two drinks. They then proceeded on County Trunk E toward Lily. The plaintiff testified as follows:

"Before we left the Windfall Mr. Schlafke pretty near went to sleep from about eight miles from town. I was watching the car and when we went to the place near there named Porcupine Inn we turned in there and we had two

drinks. Mr. Schlafke cashed a check in there. I suppose that's why he wanted to stop. He said 'Let's go now.' When we come to the intersection on 55 and E, I see him, he was pretty sleepy. I said, 'Let me drive the car?' He wouldn't let me. . . .

"*Q*. How far from Lily was it that you noticed he was sleeping and asked him to drive? *A*. I don't know. One and a half or two miles.

"*Q*. Is that the first time you noticed he was sleepy? *A*. The second time.

"*Q*. How many times did you notice? *A*. He went to sleep a little, a couple—three times. . . .

"*Q*. Before the accident happened, did you notice if he was sleepy? *A*. I told him, and he said, 'Never mind,' and asked me if I was scared.

"*Q*. Where was that? *A*. 55 intersection with E.

"*Q*. That was when you noticed he was sleepy? *A*. That's the time I stopped him to drive. . . ."·

## Cross-examination.

"*Q*. As I understand it your friend Mr. Schlafke was sleepy between Isabels and the Windfall? *A*. Absolutely. . . .

"*Q*. I suppose that once in a while Schlafke was still sleepy? *A*. Just once.

"*Q*. You got to the junction of E and 55? *A*. I told him to stop there.

"*Q*. That's right in Lily? *A*. Yes, sir.

"*Q*. What did you say? *A*. I told him to let me drive the car. He said 'Nothing doing. You scared.' I said, 'I am sleeping all afternoon, so I can drive it.'

"*Q*. You knew he had been up all night? *A*. Sleep must have got any man if he didn't sleep all night. That's why I didn't trust him.

"*Q*. You drive a car? *A*. Yes. . . ."

## Redirect examination.

"*Q*. When you stopped Schlafke and offered to drive the car and he insisted on driving himself, did he then convince you he was perfectly alright? *A*. Yes. He said, 'I know what I was doing.'

"*Q*. Were you then satisfied that Schlafke was perfectly capable of driving the car? *A*. Yes."

It thus clearly appears from the plaintiff's own testimony that he noticed that Schlafke went to sleep a little two or three times on the trip; that because he observed Schlafke was sleepy he made him stop at the intersection of County Trunk E with Highway No. 55 and wanted to drive the car himself; but after being assured by the defendant that the latter knew what he was doing he rode on with Schlafke still at the wheel, a distance of about a half mile when Schlafke again went to sleep and lost control of his car.

These facts testified to by the plaintiff himself make out about as clear a case of assumption of risk by a guest as may well be found. In *Knipfer v. Shaw,* 210 Wis. 617, 621, 246 N. W. 328, 247 N. W. 320, we reviewed a number of our prior cases in each of which it had been held that the guest had assumed the risk. We said:

"In all of those cases three elements were present which prevented recovery by the guest: (1) A hazard or danger inconsistent with the safety of the guest; (2) knowledge and appreciation of the hazard by the guest; and (3) acquiescence or a willingness to proceed in the face of the danger."

In every case where those elements have unquestionably existed we have applied our doctrine of assumption of risk and consistently denied recovery from the host by a gratuitous guest riding in the former's automobile. *Young v. Nunn, Bush & Weldon Shoe Co.* 212 Wis. 403, 249 N. W. 278; *Walker v. Kroger Grocery & Baking Co.* 214 Wis. 519, 252 N. W. 721; *Scory v. LaFave,* 215 Wis. 21, 254 N. W. 643; *Bruins v. Brandon Canning Co.* 216 Wis. 387, 257 N. W. 35.

Under the circumstances of this case it clearly appears that for some time prior to the accident a hazard or danger wholly inconsistent with the safety of the plaintiff existed; that the plaintiff had full knowledge and appreciation of that hazard and acquiesced or willingly continued to ride with the defendant notwithstanding such hazard or danger. The undisputed facts of this case more strongly impel the conclusion that the plaintiff assumed the risk than do the facts in *Krueger v.*

*Krueger,* 197 Wis. 588, 589, 222 N. W. 784, where a guest sought to recover from her host because the latter went to sleep while operating his automobile. It was there said:

"Plaintiff knew defendant's prior experience as a driver as well as all the facts surrounding the long drive from noon of the preceding day; the loss of sleep; the discomforts of the night preceding the final stage of the journey. She was bound to know as a matter of common knowledge that a result such as did follow, viz., of the defendant dozing at the wheel, was reasonably to be expected as an aftermath of the experience which they had all undergone since the preceding noon, although she testified to the contrary. Under such a situation it must be held as a matter of law that the plaintiff assumed the risk incident to the entire situation, there being here no showing upon which it could be said that the defendant failed to exercise ordinary care not to increase the danger or to create a new danger."

It appeared from the evidence in that case that the defendant, prior to the time when he finally lost control of the car, had found himself in a dozing condition but did not say anything about his condition to the other occupants of the car and apparently none of the others observed that he was sleepy. It was, however, held as before stated that the plaintiff there was bound to know that it was reasonably to be expected that the defendant might become sleepy as a result or aftermath of the long trip and the sleepless night. Here the plaintiff not only knew that Schlafke had been up all night, had been indulging in intoxicating liquors, and prior to the accident, had actually gone to sleep at least two times. There is nothing in the facts or law of *Krantz v. Krantz,* 211 Wis. 249, 248 N. W. 155, which can justify us in upholding the finding of the jury that the plaintiff did not assume the risk. The accident involved in that case resulted from the defendant's going to sleep and losing control of his car. The plaintiff there had no knowledge as to how the defendant spent his time from 11 p. m. of the night before

until 4 a. m. of the morning following when he met the defendant at the latter's house, and no notice that the defendant was sleepy or that there was any hazard in continuing to ride with him.

The county court in its decision sustaining the verdict clearly recognized the established law as to assumption of risk by a guest in an automobile, but held the rule inapplicable to the plaintiff for the following reasons:

"The question is, what under those circumstances should the plaintiff have done. Should he be required to leave the car and maroon himself out in the woods on an April morning, without hope of finding shelter and without any reason to believe that he would be able to find transportation home? This court is not of the opinion that the law requires him to go that far. There must be some limit to what a guest is required to do. He surely would not be required to step out of the car in the middle of a desert where he might perish before he could get help. If he were in an inhabited part of the country where he would have reason to believe that he could get shelter or assistance, he surely would be required to leave the car, if necessary, in order to protect himself, but under the circumstances as they appear from the evidence in this case, we believe that it would be unreasonable to expect the plaintiff to leave the comparative safety of the automobile for the unknown dangers which might await him by the roadside."

The reasons given by the trial court for holding the established rule inapplicable to the plaintiff wholly ignored the proven facts. The plaintiff knew that Schlafke was sleepy before they arrived at the Porcupine Inn. That tavern was open and the bartender was the plaintiff's friend. Later on, the plaintiff made the defendant stop his car right at the junction of County Trunk E and Highway No. 55, within the settlement known as Lily. It can hardly be said that if he had refused at the Porcupine Inn or at the junction of those highways to continue to ride with the defendant, he would have been left in an uninhabited part of the country and ex-

posed to unknown dangers which might await him by the roadside or would have been left marooned in the woods without hope of finding shelter or transportation home. To permit the answer of the jury to stand in this case would practically destroy the doctrine of assumption of risk as applied to the host and guest relationship and leave nothing of it remaining.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.