ROBERT HUBENETTE v. EDGAR OSTBY AND ANOTHER.[1]

December 4, 1942.

No. 33,271.

*Snyder, Gale & Richards,* for appellant.
*Peter E. Kamuchey,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Two causes of action, one by plaintiff in his own behalf and one in behalf of his minor son, Merlin, for damages arising out of a collision between an automobile owned and operated by defendant Ostby and one owned and operated by defendant Myhres, resulted in verdicts for plaintiffs. Myhres interposed answers but thereafter made no appearance personally or by counsel. Ostby, to whom we shall hereinafter refer as defendant, appeals from an order denying his alternative motion for judgment or a new trial in the action here involved. There is no appeal in the son's case.

The collision occurred at about 6:30 in the evening of October 28, 1941, on trunk highway No. 212 at a point about seven miles

[1]Reported in 6 N. W. (2d) 637.

east of Norwood, Minnesota. No. 212 is a paved, through highway. The parties live in St. Paul and are friends of long standing. Plaintiff is a member of the city police force, and defendant is a traveling freight agent for the Soo Line railroad. On the morning of October 28, 1941, defendant invited plaintiff and Merlin to accompany him on a trip to New Ulm. After defendant transacted his business at New Ulm, they drove to a place in the vicinity of Sleepy Eye, where they hunted pheasants during the afternoon. They started for St. Paul about four p. m. and arrived at Norwood at six o'clock. After having refreshments, the parties resumed their trip. They had proceeded approximately seven miles when the De Soto automobile in which they were riding collided with the Myhres car then traveling north on a side road which intersects with No. 212. The undisputed testimony shows that the Myhres car failed to stop before entering the through highway. Appellant does not assert error in the jury's finding of his own negligence.

The only questions presented on the appeal are whether the trial court erred in failing to submit to the jury the question of plaintiff's contributory negligence and assumption of risk and whether the damages awarded are excessive. Defendant did not plead or request an instruction on assumption of risk. However, what some cases call "assumption of risk" (Markovich v. Schlafke, 230 Wis. 639, 284 N. W. 516) other cases deal with under the term "contributory negligence." Gudbrandsen v. Pelto, 199 Minn. 220, 271 N. W. 465; Thorstad v. Doyle, 199 Minn. 543, 273 N. W. 255. In some cases the expressions are used interchangeably. Wright v. City of St. Cloud, 54 Minn. 94, 55 N. W. 819; Herdman v. Zwart, 167 Iowa 500, 149 N. W. 631. The distinction between the two defenses was important in master-and-servant cases at common law, although even then the cases were in confusion as to what that distinction was. See Rase v. M. St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L.R.A.(N.S.) 138.

In the ordinary personal injury action, where plaintiff puts himself in a position to encounter known hazards which the ordinarily

prudent person would not do, he assumes the risk of injury there-from. Such assumption of risk is but a phase of contributory negligence and is properly included within the scope of that term. Mosheuvel v. District of Columbia, 191 U. S. 247, 257, 24 S. Ct. 57, 48 L. ed. 170; H. E. & W. T. Ry. Co. v. McHale, 47 Tex. Civ. App. 360, 105 S. W. 1149; Restatement, Torts, § 466, comments *c, d;* Prosser, Torts, § 51, p. 379.

Contributory negligence was pleaded as a defense, and, while it does not appear that a specific request for an instruction thereon was made, defendant's counsel called to the attention of the trial court its failure to charge thereon and elicited from the court the suggestion that such failure was "deliberate." That presents the question whether the testimony was such that defendant was entitled to an instruction on contributory negligence.

Merlin testified that defendant drove between 75 and 80 miles an hour most of the time on the trip here involved and that he was driving about 75 miles an hour at the time of the collision; that as he passed cars on the straightaway defendant on a few occasions said, "Watch me make that car go backwards" and that "he would zoom right past it"; that on one occasion they went around a curve at 65; that defendant hardly ever traveled less than 70 except through towns. He also testified that his father spoke to defendant several times about the speed at which he was traveling and that defendant on at least one occasion replied: "This is nothing for this car," and on another that "he was afraid to open it up." Merlin also testified that he himself spoke to defendant several times about the speed.

Plaintiff testified that defendant drove between 75 and 80 miles an hour much of the time on the trip; that he cautioned him several times and that after being cautioned on one occasion defendant said, "The car can go easily 80 miles, that is nothing for this car." Plaintiff also heard defendant say as he overtook and passed another car, "Watch me make that car go backwards." Asked on cross-examination as to whether, knowing the speed at which defendant was traveling, he was satisfied to stay in the

car and take his chances, plaintiff answered, "Certainly, I had to"; and at another time, in answer to the question, "You preferred to take your chances?" he testified, "Yes, I had to." Plaintiff sat in the front seat with defendant on the way to New Ulm, and the son occupied that seat on the return trip, so they each had a good opportunity to observe the speedometer and know the speed at which the car was traveling.

Plaintiff did not see the Myhres car approaching from the south and did not warn defendant of its approach. However, no negligence can be predicated upon this failure, because defendant testified that he himself saw the lights of the Myhres car. Merlin also testified that he called defendant's attention to them.

It is the duty of a passenger or guest in an automobile to exercise ordinary care for his own safety. He must do the things to assure his safety that an ordinarily prudent person would do under the same or like circumstances. Jones v. Schreiber, 166 Minn. 177, 207 N. W. 322; Waggoner v. Gummerum, 180 Minn. 391, 231 N. W. 10; Gudbrandsen v. Pelto, 199 Minn. 220, 271 N. W. 465. Usually it is for the jury to say whether the circumstances command action on his part and, if so, how much action. Jones v. Schreiber, *supra;* 4 Blashfield, Cyc. Auto. Law (Perm. ed.) p. 207, §§ 2412, 2413, and cases cited. The experience and skill of the driver, his physical condition, the condition of the car, the time of the day or night, the condition of the highway, weather conditions, and the amount of traffic are all circumstances that may be considered. The court cannot lay down a mathematical precept as a rule of law stating in detail what should be said or done or omitted at every juncture of danger. That responsibility is ordinarily for the triers of fact.

In the case at bar, defendant had, during the day, persistently driven at speeds which Minn. St. 1941, §§ 169.14, 169.96 (Mason St. 1940 Supp. §§ 2720-178, 2720-291) make *prima facie* unreasonable, imprudent, unlawful, and negligent. There was evidence tending to prove that he had driven 75 and 80 miles per hour during the day against repeated protests by plaintiff and that he was

driving at like speed at the time of the accident. In the face of such evidence, reasonable minds might differ as to whether plaintiff should not in the exercise of ordinary care have taken other steps than those he did take to avoid riding with so persistent a violator of the *prima facie* limits of prudent driving. As we view the record, the question of contributory negligence, including plaintiff's assumption of the hazards of driving at the speeds indicated by the evidence, should have been left to the jury.

The order appealed from is reversed and a new trial granted.