## ELEANORE TATRO v. MARIE CARLSON.

137 N. W. (2d) 187.

July 16, 1965—No. 39,338.

*Farnes & Skaar,* for appellant.

*Meagher, Geer, Markham & Anderson, T. L. Adams,* and *O. C. Adamson II,* for respondent.

NELSON, JUSTICE.

Action by Eleanore Tatro against Marie Carlson, driver of an automobile in which plaintiff rode as a passenger, for injuries sustained when defendant ran into a protruding manhole pipe while driving on a road which was under construction. The jury returned a verdict for defendant and plaintiff appeals from an order denying her motion for a new trial on all issues. The basis for said motion, made upon the minutes of the court, was that the trial court committed errors of law in instructing the jury on contributory negligence and assumption of risk.

Plaintiff and defendant were neighbors. Defendant desired to pick up an item from a store in Knollwood Shopping Center and asked plaintiff if she would like to accompany her. Plaintiff agreed to this and defendant drove to plaintiff's home at about 7 p. m., August 18, 1960, and picked up plaintiff and two of her children. Defendant had previously made a few trips to the shopping center and had on each occasion followed the same route. Defendant started driving on this route, but inadvertently missed the turn which would have led her to Highway No. 100. She testified that after missing the turn she contemplated making a later one which would have led her to Highway No. 100, but decided against taking that route when plaintiff suggested that they take one by which they would miss the traffic on that highway. The record is not clear as to the street or streets defendant

traveled while following the route suggested by plaintiff. In any event, all went well until they came upon highway signs, one indicating that a bridge ahead was being repaired and that the street upon which they were traveling was to be used for local traffic only, and the other directing users of the street to detour to Highway No. 12. Defendant testified that plaintiff up to that point had been directing the course of travel and that defendant then momentarily stopped the car and asked plaintiff, who was sitting with her in the front seat, if she knew how to get to Highway No. 12. Plaintiff responded that she did not. Defendant's testimony is that the two then were in somewhat of a quandary as to which way to go and that defendant finally decided, in light of the fact that other cars were circumventing the barricade, that she would do so, too, and thereby continue on the same route. There is considerable conflict between the testimony of the parties as to what actually occurred after defendant missed the first turn of the route she usually took to Knollwood. Plaintiff's version of what happened negatives defendant's testimony that plaintiff had suggested the route they finally took and had thereafter been directing her. Plaintiff also gave this testimony about what occurred when they were confronted by the detour:

"* * * [S]he [defendant] made the remark that this sign had not been at that particular point a few nights earlier, and that she didn't feel by going to the right [as the detour would lead them] we would get to Knollwood, that Knollwood was before the bridge area; that it wouldn't interfere by going in there, and I not knowing where Knollwood was at the time—I still don't—I just didn't contradict it in any way."

Defendant testified that after missing the turn she did not try to reach Highway No. 100 by making another turn—

"* * * because Mrs. Tatro said that we could—there was an awful lot of traffic on Highway 100 and it would be simpler, less traffic to go this way, and I said that I didn't know that route, you will have to direct me, so she said okay * * *."

She said that plaintiff directed her from then at least up to the time they came upon the signs indicating that the bridge was under repair

and directing the detour to Highway No. 12. Her testimony concerning what then occurred was as follows:

"A. I asked her if she knew where Highway 12 was, and she said no, and I didn't either, so I said that well, I don't know where it is, I wouldn't know how to get to Knollwood Plaza if I did get on it, so what do we do, and I said the cars seem to be going through on the other side of this sign, shall we try it, we'll take a chance. Whether these were the exact words, I don't know, but they were to that effect, and she said it was all right with her, so we did.

"Q. And where did you go?

"A. We went to the right of this sign where the other cars had gone through, and there was traffic. I don't remember the signs she was talking about at every street, I don't know; I don't remember them.

"Q. Now, when you passed the sign and went around it, continued on to where the traffic was going—

"A. To the left.

"Q. * * * —was this a finished roadway, blacktop or cement surface or what?

"A. I believe it was.

"Q. Was the spot where the accident occurred finished roadway?

"A. My recollection of that is that it was dirt."

The record indicates that they went past five traffic signs saying "local traffic only," which brought them within one block of the bridge under construction. Plaintiff testified that at one point while driving on the barricaded road she said to defendant that "we possibly should have turned right," and that defendant responded that "when I drive I could go where I want to." Defendant testified that when they finally arrived at a point about a block from the bridge she stopped and observed another driver she had been following, who turned left from the road leading to the bridge, went a block, and turned right onto the dirt road. After watching this driver travel over the dirt road to see if it linked with Minnetonka Boulevard (a primary street), and learning that it did, defendant also followed that route. When she had traveled a half block on the dirt road, her automobile struck the manhole pipe, which protruded 3 to 6 inches above the road level in the

middle of the street. Defendant's automobile stopped abruptly and plaintiff was thrown into the windshield. It appears that the frame of defendant's auto struck the manhole frame, which caused the instant stop, leaving the left front wheel of the car resting on the center of the manhole cover.

The testimony establishes that defendant was driving at a reasonable rate of speed and was a careful driver. According to plaintiff, it was still light and twilight had not yet set in, but defendant testified that twilight had set in and that a storm was threatening. She did not have the car's headlights on at the time of the accident.

Plaintiff claims that at the time the accident occurred she was talking to her son, who was in the back seat, and did not see the manhole prior to the impact. Defendant testified that on the day following the accident plaintiff told her she had seen the manhole prior to the time it was hit, knew defendant was going to hit it, and upon realizing that had reached back and placed her arm in a horizontal position to prevent her son from going forward. Plaintiff's son, who was 11 years of age at the time of the accident, testified that he was in the right rear seat and was talking to his mother about the construction equipment lined up along the dirt road upon which they were traveling. He did not see the manhole prior to the impact but upon impact he and his sister, who was sitting on the left in the back seat, fell to the floor.

Plaintiff alleged in her complaint that defendant's negligence was the cause of the accident. This defendant denied, alleging by way of defense that any damages or injuries sustained by plaintiff were proximately caused or contributed to by her own negligence, were the result of unavoidable accident, or resulted from risks which plaintiff assumed.

■ The record before us shows no requests for instructions submitted to the court by either side. No objections were made at the close of the charge, but plaintiff now asserts that the trial court should not have submitted the issues of contributory negligence and assumption of risk to the jury and that the instructions given on those issues were erroneous. Plaintiff relies on the language used by this court in Tanski v. Jackson, 269 Minn. 304, 307, 130 N. W. (2d) 492, 494:

"* * * We have held in a number of cases that a passenger has

no obligation to act as a lookout for his driver. His responsibility is limited to warning the driver of dangers which are apparent to him but have escaped the attention of the driver, and then only if the circumstances permit an effective warning. * * * We are of the opinion that the evidence falls far short of permitting a finding that Jackson's driving was sufficiently erratic to put his back-seat passengers on notice of the likelihood of an accident. It was therefore proper to remove from the jury the issues of contributory negligence and assumption of risk."

Defendant contends that the Tanski case is not controlling here. That case involved injury to back-seat passengers suffered when defendant's car missed a curve on a blacktop highway late at night while it was raining. Defendant agrees that under those circumstances contributory negligence and assumption of risk were properly withheld from the jury but points out that the case considers only a passenger's duty to act as lookout for the driver and to admonish an erratic driver, and did not involve choosing between alternative roads and the decision to take a dangerous course when confronted with such a choice. Thus, defendant argues, the rule announced in the Tanski case is inapplicable here.

Plaintiff also cites and relies upon Rahja v. Current, 264 Minn. 465, 468, 119 N. W. (2d) 699, 701, wherein this court stated not only that contributory negligence should not have been submitted but moreover that the issue, which had been urged throughout the trial, should have been affirmatively withdrawn by the trial court, saying:

"* * * A passenger has no duty to be a lookout for the driver; and the duty to exercise ordinary care for his own safety only requires active measures to protect himself—such as to give warning—when he becomes aware of a danger of which he knows, or should know, the driver is ignorant, and when it reasonably appears that such warning would be effective to prevent the accident. * * * There must be established some personal negligent conduct of the passenger. Here, if existent, it would be a negligent failure to warn. Under the facts and circumstances shown, there is clearly no evidentiary support upon which to base a finding that plaintiff was, or should have been, aware of the impending hazard and that she knew that the driver was ignorant of its existence."

The Rahja case is likewise distinguishable because the route followed was not taken at the sole suggestion of the plaintiff and was not totally unfamiliar to the defendant, who had driven over the same route just a few hours earlier. Neither is there any suggestion that the parties had an alternative route which could have been used with a greater guarantee of safety. Thus, this court could find no conduct on the part of the plaintiff in the Rahja case upon which to predicate negligence.

There are present in the instant case, however, additional facts upon which a jury passing upon the conflicting evidence might reasonably predicate such negligence. In Hanson v. Bailey, 249 Minn. 495, 83 N. W. (2d) 252, also cited by plaintiff, this court found that a proximate cause of the accident was the negligent driving of the defendant and that the plaintiffs did not assume the risk of such driving, but only the risks inherent in construction work, when they knowingly accompanied the driver over a road under construction. The driver in the Hanson case, on a dark and rainy night, with his vision limited by the lights of an approaching car, continued through a construction zone without slackening the speed that he was traveling—some 45 miles per hour. It was the risk of this negligent conduct which this court held that plaintiff did not assume. There is no such showing of negligent conduct in the instant case since the record indicates that defendant was driving at a moderate speed and doing nothing like the negligent acts attributed to the driver in the Hanson case.

Defendant contends that in the instant case the risk which caused the injury was inherent in travel in the construction zone and was not attributable to defendant's conduct. She also points out that the Hanson case did not present a situation where plaintiff initiates the use of a dangerous way which is unfamiliar to the defendant, who, if left alone, would have followed an alternative route familiar to her and known to her to be comparatively safe.

Viewing the evidence in the light most favorable to the verdict, it appears that plaintiff, in part at least at her own suggestion, voluntarily undertook to proceed under the hazardous conditions inherent in a construction zone, in the face of an existing option to take a safe route, a

fact which distinguishes this case from those cited by plaintiff. Under the circumstances the jury may well have found plaintiff's conduct fell below the standard of care required of her.

■ In Hubenette v. Ostby, 213 Minn. 349, 6 N. W. (2d) 637, defendant Ostby had during the day persistently driven at speeds as high as 75 or 80 miles per hour over repeated protests by plaintiffs, who sought damages for injuries suffered in a collision between Ostby's automobile, in which they were riding, and one operated by another defendant. Plaintiffs testified that they cautioned Ostby several times during a trip to New Ulm and on the return to St. Paul. One of the plaintiffs was asked on cross-examination if, knowing the speed at which the defendant was traveling, he was satisfied to stay in the car and take his chances, to which he answered: "Certainly, I had to." 213 Minn. 352, 6 N. W. (2d) 639. This plaintiff sat in the front seat with defendant on the way to New Ulm and the other occupied that seat on the return trip, so each had a good opportunity to observe the speedometer and know the speed at which the car was traveling. This court in the course of that opinion said (213 Minn. 352, 6 N. W. [2d] 639):

"It is the duty of a passenger or guest in an automobile to exercise ordinary care for his own safety. He must do the things to assure his safety that an ordinarily prudent person would do under the same or like circumstances. [Citations omitted.] Usually it is for the jury to say whether the circumstances command action on his part and, if so, how much action. [Citations omitted.] The experience and skill of the driver, his physical condition, the condition of the car, the time of the day or night, the condition of the highway, weather conditions, and the amount of traffic are all circumstances that may be considered. The court cannot lay down a mathematical precept as a rule of law stating in detail what should be said or done or omitted at every juncture of danger. That responsibility is ordinarily for the triers of fact.

"* * * In the face of such evidence [concerning speed], reasonable minds might differ as to whether plaintiff should not in the exercise of ordinary care have taken other steps than those he did take to avoid riding with so persistent a violator of the *prima facie* limits of pru-

dent driving. As we view the record, the question of contributory negligence, including plaintiff's assumption of the hazards of driving at the speeds indicated by the evidence, should have been left to the jury."

Landru v. Stensrud, 219 Minn. 227, 17 N. W. (2d) 322, presented a question somewhat similar to the one under consideration in the instant case. In the Landru case plaintiff was injured when defendant's car fell through the ice on a lake upon which they had driven for the purpose of fishing. The plaintiff contended that the appearance of the ice in front of the car just prior to the crash was such as to warn a driver of ordinary prudence that to proceed was hazardous and might result in injury. The accident occurred when the car was leaving the lake and while it was located at a point some distance from the route upon which the driver had driven upon the ice. This court held on appeal that plaintiff's conduct in going upon the lake amounted to an assumption of risk of injury from the general hazards involved. We said that under the circumstances assumption of risk was but a phase of contributory negligence and was properly within the scope of that term. It would appear from reading the case that the fact that the plaintiff consented to ride across the ice on a path different from the proved safe one was an important factor in this court's determination of the issues.

In Sharp v. Johnson, 248 Minn. 518, 80 N. W. (2d) 650, plaintiff was possessed of more accurate information as to weather conditions than was defendant and had advised defendant that the local weather bureau had reported that if the group he was driving was to leave early as it did, it could probably keep ahead of an approaching storm. Neither plaintiff nor the other passengers at any time suggested postponement or discontinuance of the trip as it progressed. Since plaintiff was as experienced in driving as defendant, we held that she was chargeable with the same degree of negligence as that with which she charged defendant in undertaking the trip and that she had voluntarily assumed the risks involved therein with knowledge of weather and highway conditions equal to defendant's.

As we view the record in this case, the question of contributory neg-

ligence, including plaintiff's assumption of the hazards of driving on a road under construction, was properly submitted to the jury.

■■■ Plaintiff takes the position that the jury should have been excluded from considering the legal effect of her suggestion and choice to follow the alternative route which she indicated was simpler and had less traffic on it. She argues that the trial court's charge left the way open for the defense to argue "two routes" to the jury and thus infer that if the parties had gone on by a different roadway nothing might have happened.

It is to be noted, however, that any proper instruction concerning assumption of risk must of necessity involve the element of choice between alternatives. Unless there is such a choice, the defense does not exist. We call attention to the fact that Instruction 135, of Minnesota Jury Instruction Guides, cited in plaintiff's brief, includes the choice of alternatives as an element of assumption of risk. It states:

"Assumption of risk is voluntarily placing (oneself) (one's property) in a position to chance known hazards. To find that a person assumed the risk you must find:

"1. That he had knowledge of the risk.

"2. That he appreciated the risk.

"3. That he had a choice to avoid the risk or chance it and voluntarily chose to chance it."

In Guile v. Greenberg, 192 Minn. 548, 554, 257 N. W. 649, 651, this court sets forth the elements of the defense as follows:

"* * * In order that a defendant may avail himself of the doctrine of assumption of risk it must appear that the plaintiff had knowledge of the risk, and that, having opportunity either to incur it or to avoid it, he voluntarily chose to incur it."

In Zuber v. N. P. Ry. Co. 246 Minn. 157, 172, 74 N. W. (2d) 641, 653, we restated this rule, adding:

"* * * The fact question encountered in the instant case in connection with defendants' defense of assumption of risk is whether or not plaintiff's injury came proximately from an exposed position voluntarily assumed."

In Huyink v. Hart Publications, Inc. 212 Minn. 87, 90, 2 N. W. (2d) 552, 554, this court said:

"* * * Where a person has a choice between equally available methods to do an act, one of which is known to him to be safe and the other to be dangerous, and he chooses the dangerous method, he is guilty of contributory negligence as a matter of law, because such a choice involves unreasonable exposure to risk of injury."

In Prosser, Torts (3 ed.) p. 466, the author says:

"* * * [W]here there is a reasonably safe alternative open, the plaintiff's choice of the dangerous way is a free one, and may amount to both contributory negligence and assumption of risk."

Accepting defendant's version in the instant case, plaintiff suggested that defendant abandon the route she knew, which was safe and available, and caused the defendant to follow one unknown to her, but supposedly simpler and less heavily traveled, which proved to be fraught with the hazards of an unfinished roadway. In addition to these suggestions, defendant claims that plaintiff undertook to direct the journey over her suggested route. If there is support for defendant's claim in the evidence, plaintiff's conduct may amount to both contributory negligence and assumption of risk, since her choice of a dangerous route was freely made. In Wright v. City of St. Cloud, 54 Minn. 94, 55 N. W. 819, plaintiff sustained injuries when she fell on a public sidewalk upon which ice had accumulated. Since she knew that the sidewalk on the opposite side of the street was in good condition and she could have entirely avoided the danger by retracing her steps and going over to the other side of the street, this court said that her lack of ordinary care defeated recovery, stating (54 Minn. 98, 55 N. W. 820):

"* * * No different rule as to contributory negligence, or assumption of risks, whichever it is called, is to be applied from that which would be applied to any other case * * *."

If, upon the evidence submitted in the instant case, the jury was to properly consider the legal effect of the conduct of the parties in

proceeding on the road under construction, the existence of an alternative course is an element to be taken into account in the jury's fact determination. Under the circumstances it was necessary that the court's instructions to the jury concerning assumption of risk include reference to the necessity for an alternative route being available to the plaintiff. It was proper also to point out the necessity of this element of choice in order to fully place before the jury the conflicting claims litigated in the present action.

. We think that, upon the record submitted, the issues of contributory negligence and assumption of risk involved questions properly left to the jury. In that manner only could the total conduct of the parties be fully considered. The instructions of the trial court viewed in their entirety constituted a fair statement of the claims of the parties and the law which the jury might properly apply. The jury was free under the instructions to find either way, depending upon its judgment of the facts and the credibility of the witnesses.

The order denying plaintiff's motion for a new trial is affirmed.
Affirmed.