SIDNEY J. MEISTRICH, PLAINTIFF-RESPONDENT, v. CASINO ARENA ATTRACTIONS, INC., A BODY CORPORATE, DEFENDANT-APPELLANT.

Argued September 14, 1959—Decided October 26, 1959.

*Mr. Solomon Lautman* argued the cause for defendant-appellant.

*Mr. Robert V. Carton* argued the cause for plaintiff-respondent (*Messrs. Durand, Ivins & Carton,* attorneys; *Mr. Robert V. Carton,* of counsel).

The opinion of the court was delivered by
WEINTRAUB, C. J. Plaintiff was injured by a fall while ice-skating on a rink operated by defendant. The jury found for defendant. The Appellate Division reversed, 54 *N. J. Super.* 25 (1959), and we granted defendant's petition for

certification. 29 *N. J.* 582 (1959). The facts appear in the opinion of the Appellate Division and need not be repeated in detail.

The Appellate Division found error in the charge of assumption of the risk. It also concluded there was no evidence of contributory negligence and hence that issue should not have been submitted to the jury.

■ Defendant urges there was no negligence and therefore the alleged errors were harmless. See *Bush v. New Jersey & New York Transit Co., Inc.,* 30 *N. J.* 345, 351 (1959). We think there was sufficient proof to take the issue to the jury. There was evidence that defendant departed from the usual procedure in preparing the ice, with the result that it became too hard and hence too slippery for the patron of average ability using skates sharpened for the usual surface. From plaintiff's account of his fall, a jury could infer the stated condition of the ice was the proximate cause.

■ We however agree with defendant that the issue of contributory negligence was properly left to the trier of the facts. Plaintiff had noted that his skates slipped on turns. A jury could permissibly find he carelessly contributed to his injury when, with that knowledge, he remained on the ice and skated cross-hand with another.

■ The remaining question is whether the trial court's charge with respect to assumption of risk was erroneous. The words "the proximate cause, rule of proximate cause" appear in the charge at a point at which they are unintelligible and at which "assumption of risk" doubtless was intended. Plaintiff's counsel objected to the charge, making specific reference to the introduction of "proximate cause" in the court's treatment of assumption of risk and adding "It is confusing in my mind and I don't see how the jury can understand it." Defendant urges the stenographer erred in recording "proximate cause" when in fact the trial judge said "assumption of risk." The record, however, was not corrected, and the phrasing of plaintiff's objection to the

charge would seem to support the transcript. We cannot exclude a likelihood that the trial judge unwittingly uttered the wrong phrase, and being unaware of the slip, failed to comprehend the objection made. In these circumstances, we cannot disagree with the view of the Appellate Division.

■ The Appellate Division also found the trial court failed to differentiate between assumption of risk and contributory negligence. The Appellate Division added (54 *N. J. Super.* at *page* 32):

"We note that contributory negligence involves some breach of duty on the part of a plaintiff. His actions are such as to constitute a failure to use such care for his safety as the ordinarily prudent man in similar circumstances would use. On the other hand, assumption of risk may involve no fault or negligence, but rather entails the undertaking of a risk of a known danger. *Hendrikson v. Koppers Co., Inc.*, 11 *N. J.* 600, 607 (1953)."

As we read the charge, the trial court expressed essentially the same thought, *i. e.*, that assumption of risk may be found if plaintiff knew or reasonably should have known of the risk, notwithstanding that a reasonably prudent man would have continued in the face of the risk. We think an instruction to that effect is erroneous in the respect hereinafter delineated. The error is traceable to confusion in the opinions in our State.

Assumption of risk is a term of several meanings. For present purposes, we may place to one side certain situations which sometimes are brought within the sweeping term but which are readily differentiated from the troublesome area. Specifically we place beyond present discussion the problem raised by an express contract not to sue for injury or loss which may thereafter be occasioned by the covenantee's negligence, and also situations in which actual consent exists, as, for example, participation in a contact sport.

■ We here speak solely of the area in which injury or damage was neither intended nor expressly contracted to be non-actionable. In this area, assumption of risk has two distinct meanings. In one sense (sometimes called its

"primary" sense), it is an alternate expression for the proposition that defendant was not negligent, *i. e.,* either owed no duty or did not breach the duty owed. In its other sense (sometimes called "secondary"), assumption of risk is an affirmative defense to an established breach of duty. In its primary sense, it is accurate to say plaintiff assumed the risk whether or not he was "at fault," for the truth thereby expressed in alternate terminology is that defendant was not negligent. But in its secondary sense, *i. e.,* as an affirmative defense to an established breach of defendant's duty, it is incorrect to say plaintiff assumed the risk whether or not he was at fault.

A discussion of the subject must start with the common-law action of a servant against his master, for it was there that assumption of risk emerged or at least was distinctly developed. The master owed a duty to provide a reasonably safe place to work. If he discharged that duty, he was not liable for damages due to the inherent risks that remained. The master, upon that postulate, was not negligent. He might be liable if he failed to warn the uninitiate of those inherent risks, 3 *Labatt, Master and Servant* (*2d ed.* 1913), § 1151, *p.* 3059, but the experienced workman was said to have assumed them. Quite obviously, the expression simply stated in other terms the basic thought that the master had not breached his duty. 3 *Labatt, Master and Servant* (*2d ed.* 1913), § 1186a, *p.* 3188. Assumption of risk, in that sense, was not a separate defense. It was not required to be pleaded and the burden of proof was not upon the master. *Taylor v. Chicago, R. I. & P. Ry. Co.,* 186 *Iowa* 506, 170 *N. W.* 388, 390 (*Sup. Ct.* 1919). On the contrary, the servant had to prove the injury was caused by a risk other than one inherent in a well-run establishment, that is to say, that the master was negligent. That assumption of risk as thus used was not a separate defense but rather another way of saying the defendant was not negligent, is further evident from the frequent statement that a servant did *not* assume the risk of his master's *negligence.* 3 *Labatt,*

*Master and Servant* (*2d ed.* 1913), § 1186*a*, *p.* 3188; *Fagan v. Central R. Co.,* 94 *N. J. L.* 454, 457 (*E. & A.* 1920); *Cetofonte v. Camden Coke Co.,* 78 *N. J. L.* 662, 666 (*E. & A.* 1910); *Smith v. Erie R. Co.,* 67 *N. J. L.* 636, 645 (*E. & A.* 1902).

Hence if the servant established that his injury was caused by a risk created by the master's breach of duty to furnish a reasonably safe place to work, assumption of the risk in the primary sense necessarily was negated. But the master could press an affirmative defense, as to which the burden of pleading and proof was his, that plaintiff should none-theless fail because he voluntarily exposed himself to a risk negligently created by the master. Unhappily, that defense was also called assumption of risk. Thus two utterly dis-tinct thoughts bore the same label with inevitable confusion. *Martin v. Des Moines Edison Light Co.,* 131 *Iowa* 724, 106 *N. W.* 359, 363 (*Sup. Ct.* 1906).

The confusion was aided by the practice of pleading assumption of risk as a separate defense without indicating whether the purpose was merely to deny negligence or to assert an affirmative defense on the hypothesis that defendant was negligent. So also a single form of charge to the jury came into usage attended by the same obscurity. Thus where the facts were such that assumption of risk was pertinent only as a denial of negligence, the jury was instructed to deal first with the issue of negligence, and if negligence should be found, then to consider the "defense." Thus instructed, a jury might find negligence (a finding which in legal effect negates assumption of risk in its primary sense) and yet find for defendant under a misapprehension that assumption of risk in its primary sense somehow con-stituted a bar. Still further, although it would be technically accurate with respect to assumption of risk in its primary sense to say that plaintiff assumed the risk of non-negligent injury even though he was free of fault, that same instruc-tion, if given where assumption of risk in its secondary sense is in issue, would lead to the exculpation of a negligent

defendant upon the erroneous notion that a plaintiff assumed the risk of that negligence even though he was free of blame. And, we believe, the confusion has been further compounded by treating assumption of risk in its secondary sense as an affirmative defense different in its essential ingredients from the defense of contributory negligence, thus creating the potential of a verdict for defendant notwithstanding a jury's finding under the issue of contributory negligence that plaintiff exercised the care of the reasonably prudent man under all the circumstances.

The proposition we have just advanced, that assumption of risk in its secondary sense is indistinguishable in its nature from contributory negligence, requires further discussion. We may note at once that our cases describe these two "defenses" as "barely distinguishable," *Castino v. Di Menzo,* 124 *N. J. L.* 398, 401 (*Sup. Ct.* 1940); "virtually identical," *White v. Ellison Realty Corp.,* 5 *N. J.* 228, 235 (1950); "convertible" or "interchangeable," *Benton v. Y. M. C. A. of Westfield,* 27 *N. J.* 67, 69 (1958); *Petrone v. Margolis,* 20 *N. J. Super.* 180, 189 (*App. Div.* 1952); *Pona v. Boulevard Arena,* 35 *N. J. Super.* 148, 153 (*App. Div.* 1955), certification denied 19 *N. J.* 326 (1955); and "twins," *Scheirek v. Izsa,* 26 *N. J. Super.* 68, 72 (*App. Div.* 1953). Indeed in *Hartman v. City of Brigantine,* 23 *N. J.* 530, 537 (1957), it was suggested that in the interest of clarity assumption of risk in the secondary sense "might well be subsumed" under the defense of contributory negligence.

To determine if assumption of risk in its secondary sense differs from contributory negligence, the critical test is whether a plaintiff's conduct under the former is measured by the standard of the reasonably prudent man, for if it is, nothing remains to distinguish it from contributory negligence.

Reverting again to the soil of origin, we find the servant was held to have assumed the risk of a negligently created hazard if he continued to work with knowledge of it. Indeed,

actual knowledge was not required, for the doctrine was applied to a risk which a reasonable man would have detected. *Seaboard Air Line Railway v. Horton,* 233 *U. S.* 492, 34 *S. Ct.* 635, 58 *L. Ed.* 1062 (1914). If the employee knew or ought to have known of the hazard, he was barred even though he was guilty of no "fault" beyond continuing to work. *Cetola v. Lehigh Valley R. Co.,* 89 *N. J. L.* 691, 692 (*E. & A.* 1916). The rigor of that rule was later tempered by permitting an employee to rely for a reasonable period upon the master's promise to rectify the negligent condition. *Seaboard Air Line Railway v. Horton, supra;* 3 *Labalt, Master and Servant* (2d ed. 1913), § 1197, *p.* 3242.

Although the rationalization of the foregoing common-law view was threaded with the fiction that the servant "contracted" for his master's immunity as a *quid pro quo* for the wages paid, it seems likely that it was but a harsh and improvident application of the familiar standard of the behavior of the reasonable man. In short the courts thought it indisputable that a reasonably prudent man would not continue to work with such knowledge, and thus finding no room for difference of opinion, took the matter from the jury. But if this be an incorrect view of the underlying thought process and if assumption of risk was then something other than a misguided application of the broad principle of contributory negligence, it would not matter today, for the common-law concept, however viewed, was discredited long ago at the very scene of its flowering. Thus in our State, the Legislature, the final arbiter of public policy, abolished that defense in the Workmen's Compensation Act, ordaining that where the parties choose to retain the common-law remedy, relief shall not be denied on the ground that the employee "assumed the risks * * * arising from the failure of the employer to provide and maintain safe premises and suitable appliances." *R. S.* 34:15–2; *Brost v. Whitall-Tatum Co.,* 89 *N. J. L.* 531 (*E. & A.* 1916).

In the light of the history of the subject and legislative action just described, it would be improvident to transplant the doctrine of assumption of risk into other areas with the discredited notion that one who knew (or should have known) of a negligently created risk is barred even though free of fault, *i. e.*, even though a reasonably prudent man would have incurred the risk despite that knowledge. Rather the just approach, as with respect to other applications of contributory negligence, is to leave the issue to the jury if reasonable men may disagree or to decide it as a matter of law if there is no room for difference in evaluation. So it may be one thing to raise the bar as a matter of law if a man entered a blazing structure to retrieve a fedora, but something else thus to bar him if his purpose was to rescue a child. See *Eckert v. Long Island R. Co.*, 43 *N. Y.* 502 (*Ct. App.* 1871); *Wagner v. International Ry. Co.*, 232 *N. Y.* 176, 133 *N. E.* 437, 19 *A. L. R.* 1 (*Ct. App.* 1921). This approach has been embraced in our State. In applying assumption of risk in its secondary sense in areas other than that of master and servant, our cases have consistently recognized the ultimate question to be whether a reasonably prudent man would have moved in the face of a known risk, dealing with the issue as one of law or leaving it to the jury upon the same standard which controls the handling of the issue of contributory negligence. *Benton v. Y. M. C. A. of Westfield, supra* (27 *N. J.* at *page* 70); *Hartman v. City of Brigantine, supra* (23 *N. J.* at *page* 537); *Nauman v. Central & Lafayette Realty Co., Inc.*, 137 *N. J. L.* 428, 430 (*Sup. Ct.* 1948), affirmed on opinion below, 1 *N. J.* 124 (1948); *Coffey v. Middlesex-Spotswood, Inc.*, 52 *N. J. Super.* 39, 43 (*App. Div.* 1958), certification denied 28 *N. J.* 186 (1958); *Doherty v. Trenton Trust Co.*, 42 *N. J. Super.* 398, 403 (*App. Div.* 1956); *Pona v. Boulevard Arena, supra* (35 *N. J. Super.* at *page* 153); *Scheirek v. Izsa, supra* (26 *N. J. Super.* at *pages* 73–74); *Petrone v. Margolis, supra* (20 *N. J. Super.* at *page* 188); *Halpern v. Barbara Holding Corp.*, 5 *N. J. Super.* 87, 90

(*App. Div.* 1949); *Turck v. Kaywal Really Co.*, 3 *N. J. Super.* 165, 168 (*App. Div.* 1949); *Campbell v. Pure Oil Co.*, 15 *N. J. Misc.* 723, 727 (*Sup. Ct.* 1937); *Solomon v. Finer*, 115 *N. J. L.* 404, 406 (*Sup. Ct.* 1935); *cf. Indiero v. Fausto*, 126 *N. J. L.* 219, 220 (*Sup. Ct.* 1941), affirmed on opinion below, 127 *N. J. L.* 244 (*E. & A.* 1941); *Goldstein v. Hotel Altman*, 4 *N. J. Super.* 78 (*App. Div.* 1949).

Hence we think it clear that assumption of risk in its secondary sense is a mere phase of contributory negligence, the total issue being whether a reasonably prudent man in the exercise of due care (a) would have incurred the known risk and (b) if he would, whether such a person in the light of all of the circumstances including the appreciated risk would have conducted himself in the manner in which plaintiff acted.

Thus in the area under discussion there are but two basic issues: (1) defendant's negligence, and (2) plaintiff's contributory negligence. In view of the considerations discussed above, it has been urged that assumption of risk in both its primary and secondary senses serves merely to confuse and should be eliminated. *Editorial, Assumption. of the Risk —A False Issue*, 73 *N. J. L. J.* 346 (1950); *James, Assumption of Risk*, 61 *Yale L. J.*, 141, 169 (1952); 2 *Harper and James, Law of Torts* (1956), § 21.8, *p.* 1191. Dean Prosser agrees that in the area with which we are here concerned "assumption of risk serves no useful purpose, since it introduces nothing that is not fully covered either by the idea of an absence of duty on the part of the defendant, or by that of contributory negligence of the plaintiff." *Prosser, Torts* (2d ed. 1955), § 55, *p.* 305. He however suggests the terminology does focus attention upon the nature of the ultimate issues and hence may well be retained.

Perhaps a well-guarded charge of assumption of risk in its primary sense will aid comprehension. But we cannot see how a charge of the concept in its secondary sense will contribute a net gain. And it seems too much to expect a jury to grasp the issues when assumption of risk is ad-

vanced in both of its senses. The present case is of that character, for here defendant may urge in the primary sense that plaintiff assumed the risk inherent in a carefully operated rink and also in the secondary sense that plaintiff assumed the risk of a negligently created hazard because he imprudently skated with awareness of the added danger. We think it likely in such circumstances that a jury will think there are three or four issues rather than the two of negligence and contributory negligence.

We are satisfied there is no reason to charge assumption of the risk in its secondary sense as something distinct from contributory negligence, and hence that where the thought is projected in that aspect, the terminology of assumption of risk should not be used. Rather, as suggested in *Hartman v. City of Brigantine, supra* (23 *N. J.* at *page* 537), the subject should be subsumed under the charge of contributory negligence. With respect to its primary sense, it will not matter whether a trial court makes or omits a reference to assumption of the risk, provided that if the terminology is used the jury is plainly charged it is merely another way of expressing the thought that a defendant is not liable in the absence of negligence; that a plaintiff does not assume a risk defendant negligently created, *cf. Ford v. Reichert,* 23 *N. J.* 429, 434 (1957); and that if defendant is found to have been negligent, plaintiff is barred only if defendant carries the burden of proving contributory negligence, *i. e.,* plaintiff's failure to use the care of a reasonably prudent man under all of the circumstances either in incurring the known risk or in the manner in which he proceeded in the face of that risk.

Still another reason has been advanced for the retention of assumption of the risk in its primary sense. The thesis is that "in that situation, though the assumption of risk gives rise to a lack of duty on the defendant's part, nevertheless (notwithstanding that the plaintiff usually has the burden of proving that the defendant owes him a duty) the defendant here has the burden of proving the assumption

of risk—that is, the burden of proving the lack of duty." *Klinsky v. Hanson Van Winkle Munning Co.*, 38 *N. J. Super.* 439, 444 (*App. Div.* 1955), certification denied 20 *N. J.* 534 (1956). With this, we disagree. See, 2 *Harper and James, Law of Torts* (1956), § 21.7, *p.* 1190. In support of its view, the Appellate Division in *Klinsky* cited *De Eugenio v. Allis-Chalmers Mfg. Co.*, 210 *F.* 2d 409 (3 *Cir.* 1954), in which the law of New Jersey was applied. But the federal court was there dealing with assumption of risk in its secondary sense and hence correctly held the burden of proof was defendant's.

█ A plaintiff has the burden of proving negligence. If a defendant challenges the existence or extent of the duty asserted or disputes a breach of that duty, the burden of proof remains with plaintiff, even though defendant may be defeated in that inquiry if he fails to adduce facts to negate the duty or the breach suggested by plaintiff's proof. The burden of proof as to negligence of defendant does not shift to him merely because he chooses to express his denial of negligence in terms that plaintiff assumed (may not complain of) risks which inhered notwithstanding that defendant properly discharged the duty he owed in the circumstances. For example, if a passenger upon a common carrier is thrown by the movement of the vehicle, the burden is his to prove an unusual (negligently created) jerk or jar even though defendant asserts the fall resulted from an incidental, non-negligent movement. Perhaps the confusion flows from those situations in which a defendant may have a duty to warn of the existence of a risk which itself is not the product of negligence, just as for example at common law the master was bound to warn the inexperienced employee. The fact that there plaintiff's knowledge of the risk is crucially involved in the issue of defendant's breach of duty should not obscure the obligation of the plaintiff to prove that breach, *i. e.*, a failure to warn. Different, of course, is a case in which the risk itself was negligently created and defendant as part of his affirmative defense of

contributory negligence seeks to prove that plaintiff was warned or knew of it.

In short, each case must be analyzed to determine whether the pivotal question goes to defendant's negligence or to plaintiff's contributory negligence. If the former, then what has been called assumption of risk is only a denial of breach of duty and the burden of proof is plaintiff's. If on the other hand assumption of risk is advanced to defeat a recovery despite a demonstrated breach of defendant's duty, then it constitutes the affirmative defense of contributory negligence and the burden of proof is upon defendant.

With the modifications expressed above, the judgment of the Appellate Division is affirmed.

*For modification*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS and PROCTOR—5.