José Viñas et ux., Plaintiffs and Appellants, *v.* Pueblo Supermarket of Puerto Rico, Inc. and Great American Indemnity Company, Defendants and Appellees, R. Pérez Collazo d b u Esso Service Station, Third-Party Defendant and Appellee.

No. 112. Decided September 14, 1962.

*Oscar Castro Rivera* for appellants. *Clemente Pérez Martínez* and *Carlos A. Todd* for third-party defendant and appellee. *Rivera Zayas, Rivera Cestero & Rúa* and *Aldo Segurola de Diego* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The plaintiff suffered an accident in the parking area used by Pueblo Supermarket situated at Río Piedras in the road leading to Caguas. She claimed damages from the entity operating the supermarket and from the latter's insurer. The latter filed a third-party complaint against the operator of a gasoline service station situated next to the parking area where the accident occurred. The third-party defendant answered the third-party complaint as well as the one filed by appellant herein. The trial court denied plaintiff's claim. It determined that although the defendant and the third-party defendant had been negligent, the plaintiff "by failing to walk a longer stretch and go across a dry place to avoid the accident, had assumed the risk which caused it," which completely defeated the cause of action.

The facts which gave rise to this suit took place as follows. The claimant alighted from an automobile and upon going across a place which separated her from the establishment where the supermarket is located, slipped and fell to the ground. There was water and grease on the pavement and the sidewalk, but the court concluded, and it is so revealed by the photographs, that there was another place through which she could have gone which was not invaded by greasy water. The trial court found that the water came from a service station operated by the third-party defendant. It likewise held that the defendant corporation had knowledge of the situation and that it had not taken any steps to avoid the water from accumulating in the parking area.

■ ■ Pursuant to the present state of law "the concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity,"[1] § 1802 of the Civil Code, 31 L.P.R.A. § 5141 (1961 Supp.). Thus

---

[1] "A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity."

34

the question is reduced to determining whether the term "imprudence"[2] as used in the Act includes the assumption of risk.

■ "Assumption of risk" is a term of several meanings. *Meistrich* v. *Casino Arena Attractions*, 155 A.2d 90, 82 A.L.R.2d 1208 (N.J. 1959); *Montellier* v. *United States*, 202 F. Supp. 384, 394 (D.C.E.D.N.Y. 1962); KEETON, *Injuries from Open and Obvious Conditions*, 33 Tex. L. Rev. 1, 4 (1954).

■■ It is used whenever it has been expressly or impliedly agreed not to make any claim, notwithstanding the fact that the defendant was guilty of negligence. *Meistrich* v. *Casino Arena Attractions, supra.* Obviously, this is not the meaning that comes into play in this case. The term is also employed in such cases where the defendant has not incurred liability since he did not owe any duty to the claimant; or if he did, he did not breach it. This duty is charged as assumption of risk in a "primary" sense.[3] *Texidor* v. *Parks*

[2] At the hearing of February 24, 1956 before the Senate Committee on Civil Juridical Matters to consider S.B. 652 corresponding to the four-year term 1953–1956, which became Act No. 28 of 1956, amending § 1802 of the Civil Code, the term "imprudence" was explained thus, as it appears from a transcript of said hearing attached to the record of the Department of Justice:

"As I explained at the first hearing when the bill was drafted, it was sought to be as accurate as possible from the point of view of juridical technique and after a global study of the matter we found that the precise term to be used in this case was 'imprudence of the party aggrieved.' In this we were following examples of authors and even of codes of other countries which used the term 'imprudence' and also a discussion which we had read in which it was alleged that it was improper, in strict juridical terminology, to speak of fault or negligence against oneself; because the fault or negligence is a juridical phenomenon which implies breach of duty towards someone else and for that reason it was somewhat inaccurate to speak about fault or negligence of the aggrieved party against himself and we preferred to follow the terminology of the imprudence."

[3] In the cases of *Echevarría* v. *Despiau*, 72 P.R.R. 442 (1951) and *Palmer* v. *Barreras*, 73 P.R.R. 266 (1953), we referred to the assumption of risk in its "primary" sense, but in both we held that it was not applicable to the facts presented.

*Administration*, 85 P.R.R. 846 (1962), *Meistrich* v. *Casino Arena Attractions, supra;* 2 HARPER & JAMES, The Law of Torts, § 21.1 (1956 ed.). Nor is it applicable to a situation of facts such as the one presented in this case. In another concept, classified as "secondary," the assumption of risk is an affirmative defense which may be alleged by one who has breached a duty.[4] The claimant has assumed the risk created by defendant's breach of duty toward him. *Meistrich* v. *Casino Arena Attractions, supra.* 2 HARPER & JAMES, *op. cit.,* § 21.1; JAMES, JR., *Assumption of Risk*, 61 Yale L.J. 161 (1952). The latter is the situation presented in the case at bar. The supermarket did not comply with its obligation to keep the parking area safe for its customers. It was its duty to do so. *Morris* v. *Atlantic & Pacific Tea Company*, 121 A.2d 135 (Pa. 1956); *Hoffman* v. *The Kroger Company*, 340 S.W.2d 152 (Mo. 1960). The defendant does not deny this duty. The plaintiff, notwithstanding the existence of another place through which she could have gone, decided to do so where it was covered with the greasy water. She acted with imprudence.

The situation of facts considered herein is a typical case of contributory negligence. It has been so maintained by those cognizant with the matter and the courts have so held. They hold that the assumption of risk in its "secondary" sense is but a phase or showing of contributory negligence.

In *Hubenette* v. *Ostby*, 6 N.W.2d 637 (Minn. 1942), it was stated as follows at p. 638:

"In the ordinary personal injury action, where plaintiff puts himself in a position to encounter known hazards which the ordinarily prudent person would not do, he assumes the risk of injury therefrom. Such assumption of risk is but a phase of contributory negligence and is properly included within the

---

[4] Rules 8c of 1943 and 6.3 of 1958 of the Rules of Civil Procedure establish that the defense of assumption of risk and negligence should be made affirmatively.

scope of that term. Mosheuvel v. District of Columbia, 191 U.S. 247, 257, 24 S.Ct. 57, 48 L.Ed. 170; Houston, E. & W. T. Ry. Co. v. McHale, 47 Tex.Civ.App. 360, 105 S.W. 1149; Restatement, Torts, § 466, comments c, d; Prosser, Torts, § 51, p. 379."

The United States Supreme Court in *Owens* v. *Union Pacific R. Co.*, 319 U.S. 715 (1943) stated:

"The common-law defenses, assumption of risk, contributory negligence, and the fellow-servant rule were originated and developed in common ground. Not entirely identical in conception, they conjoined and overlapped in many applications. The overlapping areas first concealed, then created a confusion which only served to create more; so that in time the three became more, rather than less, indistinguishable. And assumption of risk took over also, in misguided appellation, large regions of the law of negligence."

See, also, *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U.S. 54, 62 *et seq.* (1943); PROSSER, The Thomas M. Cooley Lectures, Comparative Negligence 1, 48 (1953); BUFORD, *Assumption of Risk Under the Federal Employers' Liability Act*, 28 Harv. L. Rev. 163, 183 (1914).

In *Meistrich* v. *Casino Arena Attractions, supra,* it was said:

"We are satisfied there is no reason to charge assumption of the risk in its secondary sense as something distinct from contributory negligence, and hence that where the thought is projected in that aspect, the terminology of assumption of risk should not be used. Rather, as suggested in Hartman v. City of Brigantine, supra (23 N.J. at page 537, 129 A.2d at page 880), the subject should be subsumed under the charge of contributory negligence."

The following cases hold that the assumption of risk in its "secondary" sense is equivalent to contributory negligence. *MacKintosh Co.* v. *Wells*, 118 So. 276 (Ala. 1928); *Boulder Valley Coal Co.* v. *Jernberg*, 197 P.2d 155 (Colo. 1948); *Ballow* v. *Jewett City Sau Bank*, 24 A.2d 260 (Conn. 1942); *Barthoff* v. *Baker*, 71 So.2d 480 (Fla. 1954); *Hargis* v.

*Standard Oil Co.*, 134 N.W.2d 518 (Ill. 1956); *Emhardt* v. *Perry Skadicine, Inc.*, 46 N.E.2d 704 (Ind. 1943); *Electric Plant Board* v. *Dotson*, 304 S.W.2d 779 (Ky. 1956); *Porter* v. *Cornett*, 206 S.W.2d 83 (Ky. 1947); *Spears* v. *American Fidelity & Casualty Co.*, 123 So.2d 513 (La. 1960); *Grasaw* v. *Hanson*, 32 N.W.2d 583 (Minn. 1948); *Schleisner Co.* v. *Birchett*, 96 A.2d 494 (Md. 1953); *Centrello* v. *Basky*, 128 N.E.2d 80 (Ohio 1955); *Vetaro* v. *C.W. & P. Constr. Co.*, 28 N.E.2d 507 (Ohio 1940); *Earll* v. *Wichser*, 30 A.2d 803 (Penn. 1943); *Chattanooga Gas Co.* v. *Underwood*, 270 S.W.2d 652 (Tenn. 1954); *Packard* v. *Quesnel*, 22 A.2d 164 (Vt. 1941); *Rocky Mountain Trucking Co.* v. *Taylor*, 335 P.2d 448 (Wy. 1959); *Askin* v. *Dalgarno*, 293 F.2d 424 (10th Cir. 1961); *Weber* v. *Eaton*, 160 F.2d 577 (D.C. Cir. 1947). See, also, the exhaustive annotations in 82 A.L.R.2d 1218 (1962).

HARPER & JAMES, *op. cit.*, § 21.8, in their appraisal treating the defense of assumption of risk state at the end:

"The doctrine of assumption of risk, however it is analyzed and defined, is in most of its aspects a defendant's doctrine which restricts liability and so cuts down the compensation of accident victims. It is a heritage of the extreme individualism of the early industrial revolution. But quite aside from any questions of policy or of substance, the concept of assuming the risk is purely duplicative of other more widely understood concepts, such as scope of duty or contributory negligence. . . .

"Except for express assumption of risk, therefore, [it refers to the primary sense already mentioned] the term and the concept should be abolished. It adds nothing to modern law except confusion."

See, also, PROSSER, Torts 305, § 55 (2d ed. 1955); PAYNE, *Assumption of Risk and Negligence*, 35 Can. B. Rev. 950 (1957); JAMES, JR., *Tort Liability*, 63 Yale L. J. 605, 630, 631 (1954); GREEN, *Protection Under Negligence Law*, 47 N.W.U.L. Rev. 751 (1953); WHELAN, *Comparative Negligence*, Wis. L. Rev.

465, 482 (1938) ; HARBINSON, *Distinction Between Assumption of Risk and Contributory Negligence in Wisconsin*, Wis. L. Rev. 460 (1960).

In the state of Wisconsin, where there exists a version of comparative negligence (39 W.S.A. 331.045) —it requires that plaintiff's negligence be less than defendant's— it had been held that although contributory negligence established in the degree required by law did not defeat the action, the assumption of risk was an absolute defense. *Shrofe* v. *Rural Mutual Cas. Ins. Co.*, 45 N.W.2d 76 (Wis. 1950) ; *Schiro* v. *Oriental Realty*, 76 N.W.2d 355 (Wis. 1956). However, less than eight months ago the Supreme Court of that state changed its position and held that contributory negligence and assumption of risk in certain cases were one and the same thing and adopted the new rule as more in harmony with the underlying spirit of the principle of comparative negligence. *McConville* v. *State Farm Mutual Automobile Ins. Co.*, 113 N.W.2d 14 (Wis. 1962) ; Note 60 Mich. L. Rev. 819 (1962) ; *Bielski* v. *Schulze*, 114 N.W.2d 105 (Wis. 1962), and see concurrent opinion in *Baird* v. *Cornelius*, 107 N.W.2d 278 (Wis. 1961).

■ It is, therefore, inescapable to conclude that contributory negligence and assumption of risk in the sense considered herein, and under the attendant circumstances in this case, are the same thing and that the plaintiff incurring either one does not lose his cause of action, but bears a reduction of the indemnity to which he may be entitled.

■ Let us consider now the compensation to be granted. The trial judge, as we have said, held that plaintiff could have avoided going through the water which invaded the parking area. Thus, the claimant incurred negligence to the same extent as the owner of the service station and the owner of the supermarket, the former in creating, and the latter in tolerating, a hazardous situation. The damages suffered by plaintiff, therefore, must be reduced to half.

 According to the evidence before us, the plaintiff sustained a fall and "had suffered a severe traumatism in the right foot, in the left knee and in one hand"; four days after the accident "her entire right leg was swollen from the middle third of the leg to the right foot," showing "signs of the formation of a serious hematoma which invaded the region of the ankle and of the articulations of the tarsus in the right foot." She felt great pain. She had lacerations in the left knee and "a slight injury in the ring finger of her left hand." X-rays were taken and they revealed "an abulsion [*sic*] a slight tearing off in the superior face of the scaphoid of the right tarsus." As a result of all she remained in bed about 25 days and then was referred to a physiotherapist. She had full recovery, but at the time of the trial she still felt pain when walking. She incurred expenses for medical fees, medicines and X-rays which amounted to $285. Had she not been guilty of contributory negligence the damages suffered by her could have been appraised at $4,000, but since the compensation must be reduced, as previously stated, the judgment rendered by the Superior Court, San Juan Part, on January 22, 1959, will be reversed and another rendered instead ordering the defendants and the third-party defendant [5] to pay solidarily the sum of $2,142.50, with imposition of costs, including the costs of review.

---

[5] Upon failing to amend their complaint to join the third-party defendant as defendant in the action it could be adduced that no judgment may be entered against it as we have done (Rule 14 of 1943 in force when the action was filed and the third-party defendant was included; *cf.* Rule 12.1 of 1958), but in view of the fact that said third-party defendant answered not only the third-party complaint but also set up allegations against the original complaint, and that the plaintiff introduced incriminating evidence against both—the defendants and the third-party defendant—our failure to do so would tend to exalt a procedural nicety to elude full justice. See *Simonpietri* v. *Blanco, Lippitt & Simonpietri*, 74 P.R.R. 499 (1953).