No. 12108

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

———————————

ELEANOR M. KIPP, As Guardian
Ad Litem of JEWELL ANN KIPP,
a Minor,

Plaintiff and Appellant,

-vs-

CHUCK WILLOUGHBY,

Defendant and Respondent.

———————————

Appeal from:  District Court of the Second Judicial District,
Honorable John B. McClernan, Judge presiding.

Counsel of Record:

For Appellant:

Burgess, Joyce, Prothero, Whelan and O'Leary,
Butte, Montana.
Thomas F. Joyce argued and Robert T. O'Leary argued,
Butte, Montana.

For Respondent:

Corette, Smith and Dean, Butte, Montana
R. D. Corette, Jr. argued, Butte, Montana.

———————————

Submitted:  January 23, 1973

Decided: FEB 2 8 1973

Filed: FEB 2 8 1973

_____
Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal is from a judgment entered on a jury verdict in favor of defendant Chuck Willoughby in the district court of the second judicial district, county of Silver Bow.

The case concerns a motorbike-automobile collison on February 25, 1970. Jewell Ann Kipp, 15 years of age, was driving a 1970 Honda 70 motorbike. Chuck Willoughby, 19 years of age, was driving a 1965 Ford automobile. As a result of the collision, Jewell Kipp received a broken leg. Willoughby was not injured.

Upon reviewing the facts concerning the collision, we find a conflict on several points within the testimony of the litigants and witnesses. It would appear from the record that the collision occurred on an unimproved street known as Four-and-a-Half-Mile Vue Road which runs north and south on the southern outskirts of the city of Butte. The time was approximately 4:45 p.m.; the weather conditions were clear and dry; visibility was good.

Willoughby testified he had gone to the residence of a Mr. Chapman for the purpose of obtaining used auto parts for a friend, Keith Smith, who accompanied him. The Chapman driveway is perpendicular to and adjoins Four-and-a-Half-Mile Vue Road. Immediately before the collision Willoughby was either in the process of backing out or had completed backing out of the driveway, turning the rear end of his vehicle to the south so that it would be facing in a northerly direction. His own testimony appears in conflict as to whether he was moving at the time of the impact.

Jewell Kipp and a passenger, Phyllis Baxter, aged 12, were proceeding north on the motorbike at a speed of about 15 to 20 miles per hour. Jewell Kipp testified she was unable to see into the Chapman driveway from the road because of numerous wrecked cars and a tractor in the lot adjacent to the driveway. Willoughby testified he had a clear view of the road from 20 feet

within the driveway; that he did look south down the road; that he did not see the Kipp motorbike; and that he did not stop until he felt a slight bump on the back of his car. Jewell Kipp testified she first saw the Willoughby car when it backed onto the road in front of her and that she did not try to stop the motorbike because she felt she was unable to stop in time. She stated that although she attempted to turn the motorbike to the left to avoid the car, it was hit by the left rear fender of the Willoughby car.

Phyllis Baxter, the passenger on the motorbike, testified that Jewell tried to avoid the car, but it kept coming and hit the motorbike. She also testified that she received a knee injury in the collision and was on crutches for two weeks.

Keith Smith, the passenger in the Willoughby car, testified that he did not know whether the car was moving at the time of the impact and was first aware of the collision when he heard the impact.

Jewell Kipp had owned a Honda 50 motorbike since March 1969, and had more recently received the Honda 70 as a gift from her father.

On appeal, two assignments of error are presented on behalf of appellant:

(1) That the district court erred in giving an instruction on the law of assumption of risk and permitting defendant to argue that plaintiff assumed the risk of injury because she had no Montana driver's license.

(2) That the district court erred in permitting jury argument that failure to have a Montana driver's license constituted negligence after having refused defendant's instruction on that theory.

We find merit in the first assignment of error. The assumption of risk instruction was improper in this case. There was no evidence introduced at trial which indicated that Jewell

Kipp had committed any act or omission, which under Montana law could be construed as constituting an assumption of risk of the injury she received in the accident.

There was considerable argument and some record reference and argument during settlement of instructions concerning statute violations, some of which went to the question of negligence of both parties. There was considerable reference to a statute violation on the part of Jewell Kipp for failure to have a Montana driver's license. The record also discloses that Willoughby had a valid driver's license, but failed to comply with the statute in regard to obtaining license plates for the vehicle he was driving.

Neither the violations of statute by Jewell Kipp nor those by Willoughby place either of them in a legal classification of "trespasser" on the streets nor do the violations invoke any legal doctrine of "assumption of risk" toward either of them. The assumption of risk instruction has no application to the determinations which were required to be made by the jury and, consequently, could only serve to confuse and mislead it.

The doctrine of assumption of risk has its historical origin in the master-servant relationship and was gradually given application to other types of contractual relationships. See: Meistrich v. Casino Arena Attractions, 31 N.J. 44, 155 A.2d 90, 82 ALR2d 1208.

7 C.J.S. Assumption, p. 137, gives this definition of assumption of risk:

> "The term presupposes some danger, a knowledge thereof, a reasonable opportunity to ascertain the nature of the risk, and ordinarily implies appreciation thereof, and acquiescence therein; and has been defined as the acquiescence of an ordinarily prudent man in a known danger, the risk of which he assumes by contract."

However, the doctrine has been extended beyond the contractual and quasi-contractual relationships and applied as a theory of defense to preclude recovery in negligence cases. An explanation of these applications was given by the federal district court in Montellier v. United States, 202 F.Supp. 384, 394:

"Assumption of risk is a term which has been surrounded by much confusion because it has been used by the courts in at least four different senses and the distinctions are seldom made clear. Since the defendant here has not specified the exact sense in which it is invoking the defense, the court will consider all of them. In its simplest sense the doctrine means that plaintiff has given his express consent to relieve the defendant of an obligation of conduct toward him and has agreed to take his chance of injury from a known risk. A second meaning is that plaintiff, with knowledge of the risk, has entered voluntarily into some relation with the defendant which necessarily involves danger of harm from a known risk, and thus impliedly consents to take his own chances. In a third sense, the plaintiff may act entirely reasonably but, by voluntarily encountering a known risk which defendant has negligently allowed to come into being, he relieves the defendant of liability. In the fourth sense of assumption of risk, plaintiff's conduct is itself unreasonable and amounts to and is equivalent of contributory negligence. Prosser, Torts, 303-04 (1955)."

Here, there was no contractual, quasi-contractual or consentual relationship between the litigants. So it is the fourth of the above enumerated applications of assumption of risk with which we are concerned. Used in this sense, the concept of assumption of risk is a more conclusive form of contributory negligence.

We hold, in light of the evidence presented, that it was a matter for jury determination whether the facts indicated that Jewell Kipp in operation of the motorbike contributed as a proximate cause to her injury in the collision between her motorbike and the vehicle of Willoughby.

The second assignment of error involves arguments made by counsel to the jury in closing argument. This Court has no record from which to determine what specific arguments were made. For this reason, we cannot review the second assignment of error.

The judgment of the district court is reversed and the cause remanded for a new trial.

_____
Associate Justice

- 5 -

We Concur:

_Jas. T. Harrison_
Chief Justice

_Frank I. Haswell_

_John Conway Harrison_
Associate Justices

Mr. Justice Wesley Castles dissenting:

I dissent. The majority opinion admits that a conflict in the evidence occurred. The jury resolved those conflicts in favor of defendant. The evidence proved that Kipp simply ran into the rear end of Willoughby's car. Willoughby's car was in the street heading in the same direction as Kipp. The car was stopped and it was in forward gear. Phyllis Baxter, the passenger on the motorbike, testified that when she first saw the car it was in the street, pointed in the same direction the motorbike was going. While on direct examination, she said the car was backing out of the Chapman driveway and sideswiped the motorbike, on cross-examination she admitted she did not see the car except in the street pointing in the same direction the motorbike was going.

There is some slight conflict in the evidence on the above facts, but the jury resolved those.

I agree with the majority that "* * * in light of the evidence presented, that it was a matter for jury determination whether the facts indicated that Jewell Kipp in operation of the motorbike contributed as a proximate cause to her injury in the collision between her motorbike and the vehicle of Willoughby."

This the jury did, and I would affirm.

_Wesley Castles_
Associate Justice.

- 6 -