MR. JUSTICE DALY
delivered the Opinion of the Court.
This appeal is from a judgment entered on a jury verdict in favor of defendant Chuck Willoughby in the district of the second judicial district, county of Silver Bow.
The case concerns a motorbike-automobile collision on February 25, 1970. Jewell Ann Kipp, 15 years of age, was driving a 1970 Honda 70 motorbike. Chuck Willoughby, 19 years of age, was driving a 1965 Ford automobile. As a result of the collision Jewell Kipp received a broken leg. Willoughby was not injured.
Upon reviewing the facts concerning the collision, we find a conflict on several points within the testimony of the litigants, and witnesses. It would appear from the record that the collision occurred on an unimproved street known as Four-and-a-Half-Mile Vue Road which runs north and south on the southern outskirts of the city of Butte. The time was approximately 4:45 p. m.; the weather conditions were clear and dry; visibility was. good.
Willoughby testified he had gone to the residence of a Mr. Chapman for the purpose of obtaining used auto parts for a. friend, Keith Smith, who accompanied him. The Chapman driveway is perpendicular to and adjoins Four-and-a-Half-Mile Vue Road. Immediately before the collision Willoughby was either in the process of backing out or had completed backing out of the driveway, turning the. rear end of his vehicle to the south so-that it would be facing in a northerly direction. His own testimony appears in conflict as to whether he was moving at the time of the impact.
*434 Jewell Kipp and a passenger, Phyllis Baxter, aged 12, were proceeding north on the motorbike at a speed of about 15 to 20 miles per hour. Jewell Kipp testified she was unable to see into the Chapman driveway from the road because of numerous wrecked ears and a tractor in the lot adjacent to the driveway. Willoughby testified he had a clear view of the road from 20 feet within the driveway; that he did look south down the road; that he did not see the Kipp motorbike; and that he did not stop until he felt a slight bump on the back of his car. Jewell Kipp testified she first saw the Willoughby car when it backed onto the road in front of her and that she did not try to stop the motorbike because she felt she was unable to stop in time. She stated that although she attempted to turn the motorbike to the left to avoid the car, it was hit by the left rear fender of the Willoughby car.
Phyllis Baxter, the passenger on the motorbike, testified that Jewell tried to avoid the ear, but it kept coming and hit the motorbike. She also testified that she received a knee injury in the collision and was on crutches for two weeks.
Keith Smith, the passenger in the Willoughby car, testified that he did not know whether the car was moving at the time of the impact and was first aware of the collision when he heard the impact.
Jewell Kipp had owned a Honda 50 motorbike since March 1969, and had more recently received the Honda 70 as a gift from her father.
On appeal, two assignments of error are presented on behalf of appellant:
(1) That the district court erred in giving an instruction on the law of assumption of risk and permitting defendant to argue that plaintiff assumed the risk of injury because she had no Montana driver’s license.
(2) That the district court erred in permitting jury argument that failure to have a Montana driver’s license constituted *435 negligence after having refused defendant’s instruction on that theory.
We find merit in the first assignment of error. The assumption of risk instruction was improper in this case. There was no evidence introduced at trial which indicated that Jewell Kipp had committed any act or omission, which under Montana law could be construed as constituting an assumption of risk of the injury she received in the accident.
There was considerable argument and some record reference and argument during settlement of instructions concerning statute violations, some of which went to the question of negligence of both parties. There was considerable reference to a statute violation on the part of Jewell Kipp for failure to have a Montana driver’s license. The record also discloses that Willoughby had a valid driver’s license, but failed to comply with the statute in regard to obtaining license plates for the vehicle he was driving.
Neither the violations of statute by Jewell Kipp nor those by Willoughby place either of them in a legal classification of “trespasser” on the streets nor do the violations invoke any legal doctrine of “assumption of risk” toward either of them. The assumption of risk instruction has no application to the determination which were required to be made by the jury and, consequently, could only serve to confuse and mislead it.
The dodrine of assumption of risk has its historical origin in the master-servant relationship and was gradually given application to other types of contractual relationships. See: Meistrich v. Casino Arena Attractions, 31 N.J. 44, 155 A.2d 90, 82 A.L.R. 2d 1208.
7 C.J.S. Assumption, p. 137, gives this definition of assumption of risk:
“The term presupposes some danger, a knowledge thereof, a reasonable opportunity to ascertain the nature of the risk, and ordinarily implies appreciation thereof, and acquiescence there *436 in; and has been defined as the acquiescence of an ordinary prudent man in a known danger, the risk of which he assumes by ■contract. ’ ’
However, the doctrine has been extended beyond the contractual and quasi-eontractual relationships and applied as a theory of defense to preclude recovery in negligence eases. An ■explanation of these applications was given by the federal district court in Montellier v. United States, D.C., 202 F.Supp. 384, 394.
“Assumption of risk is a term which has been surrounded by much confusion because it has been used by the courts in at least four different senses and the distinctions are seldom made ■clear. Since the defendant here has not specified the exact sense in which it is invoking the defense, the court will consider all •of them. In its simplest sense the doctrine means that plaintiff has given his express consent to relieve the defendant of an •obligation of conduct toward him and has agreed to take his ■chance of injury from a known risk. A second meaning is that plaintiff, with kuowledge of the risk, has entered voluntarily into some relation with the defendant which necessarily involves •danger of harm from a known risk, and thus impliedly consents to take his own chances. In a third sense, the plaintiff may act •entirely reasonably but, by voluntarily encountering a known risk which defendant has negligently allowed to come into being, he relieves the defendant of liability. In the fourth sense of assumption of risk, plaintiff's conduct is itself unreasonable and •amounts to and is equivalent of contributory negligence. Prosser, Torts, 303-04 (1955)."
Here, there was no contractual, quasicontractual or consensual relationship between the litigants. So it is the fourth of the above enumerated applications of assumption of risk with which we .are concerned. Used in this sense, the concept of assumption of risk is a more conclusive form of contributory negligence.
We hold, in light of the evidence presented, that it was *437 a matter for jury determination whether the facts indicated that Jewell Kipp in operation of the motorbike contributed as a proximate cause to her injury in the collision between her motorbike and the vehicle of Willoughby.
The second assignment of error involves arguments made by counsel to the jury in closing argument. This Court has no record from which to determine what specific arguments were made. For this reason, we cannot review the second assignment of error.
The judgment of the district court is reversed and the cause remanded for a new trial.
MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES HASWELL and JOHN C. HARRISON, concur.