330 So.2d 81 (1976)
William J. HALL and Janet E. Hall, Appellants,
v.
Jack J. HOLTON and Zurich Insurance Company, Appellees.
No. 75-587.
District Court of Appeal of Florida, Second District.
March 26, 1976.
As Corrected on Denial of Rehearing April 28, 1976.
*82 John L. McFadyen, St. Petersburg, Kenneth M. Wilkinson, and John A. Lloyd, Jr., P.A., St. Petersburg, for appellants.
Jeffrey S. O'Brien and C.S. Carrere of Harrison, Greene, Mann, Rowe & Stanton, St. Petersburg, for appellees.
GRIMES, Judge.
This is an appeal from a summary judgment entered against a policeman who fell through the floor of an abandoned building while he was checking it out for vagrants.
Appellee, Holton, owned a building located in the path of the proposed extension of Interstate 4. The building had been abandoned and allowed to run down because it was going to be condemned by the Department of Transportation. On several occasions prior to the accident, Holton had been notified by the St. Petersburg Building Department to repair the floors because they were rotten. Holton did not make the repairs because the Department of Transportation told him that doing so would only increase the condemnation value of the property. Holton knew the building had often been the sleeping place of vagrants and other street people. He said he had caused the doors to be locked and the lower windows to be boarded up in an effort to try to keep these people out of the building.
In the dark early morning hours of the day the accident occurred, appellant, Hall, in the course of his duties as a police officer, went into the building through an unlocked rear door because he thought he had seen a light coming from a second story window. Finding nothing, he left but returned after it became light to further pursue his investigation. While on the second floor, the plaintiff fell through the floor and was injured.
The court entered summary judgment on two grounds:
(1) Holton violated no duty to Hall who occupied the status of an uninvited licensee; and
(2) The defense of assumption of risk was a complete bar to Hall's recovery.
We shall discuss both of these points in turn.
Determining the legal status occupied by a policeman while on the land of another has always been troublesome. Most jurisdictions have held policemen to be licensees, primarily upon the theory that it would place too much of a burden on landowners to classify them as invitees. See 86 A.L.R.2d 1184. The Supreme Court of Florida adopted this principle by dictum in Fred Howland, Inc. v. Morris, 1940, 143 Fla. 189, 196 So. 472. Thereafter, in Romedy v. Johnston, Fla.App.1st, 1967, 193 So.2d 487, the First District Court of Appeal held that a fireman was a licensee and assumed that a policeman occupied the same category. Finally, in Adair v. The Island Club, Fla.App.2d, 1969, 225 So.2d 541, this court squarely held that a policeman was a licensee. Thus, there is no Florida case which has held that a policeman occupies any higher status than a licensee. In spite of the foregoing authorities, Hall argues that the more recent case of Wood v. Camp, Fla. 1973, 284 So.2d 691, had the effect of elevating his status to that of an invitee. We cannot accept this contention because there is no showing that he was either expressly or impliedly invited to Holton's building. Since the issue is not before us, we express no opinion on whether Hall would have been an invitee under the rationale of Wood had the record reflected such an invitation.
Therefore, the court correctly categorized Hall as an uninvited licensee. But *83 upon this record does this mean that he must suffer summary judgment against him as a matter of law? The duty owed to a licensee is to refrain from wanton negligence or wilful misconduct which would injure him, to refrain from intentionally exposing him to danger and to warn him of a defect or condition known to the landowner to be dangerous when such danger is not open to ordinary observation by the licensee. Post v. Lunney, Fla. 1972, 261 So.2d 146. Even though Hall knew the building was run down, there were no holes in the floor, and the record does not sufficiently indicate that Hall should have known that the floor wouldn't hold his weight. On the other hand, Holton had been specifically advised that the floors were rotten, but he had taken no steps to repair them. While Holton testified that he had directed the doors to be locked and bolted, Hall said he entered the building through an unlocked rear door. There were no signs posted to warn of the danger. Thus, it appears that there were issues of fact as to (1) whether there existed a dangerous condition known to the owner but not open to ordinary observation which placed upon him a duty to warn, and if so, (2) whether the owner adequately fulfilled this duty.
Our discussion of this issue could be terminated at this point were it not for the fact that in defining the duty owed to a licensee at least two Florida cases have added a caveat to the effect that before the duty to warn of a hidden danger arises, the presence of the licensee on the premises must be known by the owner. City of Boca Raton v. Mattef, Fla. 1956, 91 So.2d 644; Romedy v. Johnston, supra. While such statements only constituted dicta in both cases, we would readily concede that a strict requirement of knowledge makes good sense in many circumstances. For example, a person who finds himself on another's premises as a result of an emergency has usually been categorized as a licensee. Restatement of Torts 2d, § 330, comment e. Yet, if the landowner has no reason to believe he is coming, it would be an undue burden to require him to warn of all dangerous but hidden conditions on the property even assuming this could be accomplished. Logic would dictate the application of the same rule with respect to a policeman who happens to be crossing an owner's premises while chasing a person who has just burglarized a neighboring home. Where, however, the circumstances are such that one might reasonably expect the presence of a licensee at the site of a hidden but dangerous condition on his premises, we think that it is not too much to ask that the landowner erect signs or take other suitable precautions to warn the licensee when he comes. Thus, we construe the requirement of knowledge of the licensee's presence to include those circumstances where the owner could reasonably anticipate that the licensee would be on his premises. See 62 Am.Jur.2d, Premises Liability, § 84.
As related to the instant case, the police, themselves, had advised Holton that vagrants were making themselves at home in his unoccupied building. He also knew that for this reason the police were making periodic inspections of the premises. Thus, Holton has not satisfied his summary judgment burden of demonstrating that he had no reason to anticipate the presence of police officers in his building. Smith v. Avis Rent-A-Car System, Inc., Fla.App.2d, 1974, 297 So.2d 841.
Notwithstanding the foregoing analysis, if assumption of the risk is still an absolute bar to liability in Florida, Holton makes a persuasive argument that the doctrine precludes recovery by Hall as a matter of law. The question posed is whether Florida law on the doctrine of assumption of risk has been changed by Hoffman v. Jones, Fla. 1973, 280 So.2d 431. In that case, the Supreme Court observed that its decision would prompt an inquiry concerning its effect upon the assumption of risk doctrine but specifically *84 declined to pass on the question until the issue was directly presented. Since that time, the question has been faced by the other three district courts of appeal. Two of them have held that assumption of risk merges with and becomes a phase of comparative negligence. Parker v. Maule Industries, Inc., Fla.App.1st, 1975, 321 So.2d 106; Rea v. Leadership Housing, Inc., Fla.App.4th, 1975, 312 So.2d 818. The Third District Court of Appeal took a contrary view in Dorta v. Blackburn, Fla. App.3d, 1974, 302 So.2d 450. The issue is likely to be soon resolved by the Supreme Court. In the meantime, we are persuaded to align this court with the position taken by the First and Fourth Districts.
The relationship between assumption of risk and contributory negligence has long been the subject of discussion and of no little controversy. In view of the impending Supreme Court determination of this issue, little purpose would be served here by a lengthy discussion of the problem. Therefore, we will content ourselves to cite with approval and to include some pertinent quotations from the case of Meistrich v. Casino Area Attractions, 1959, 31 N.J. 44, 155 A.2d 90. That case, which is the lead case for an annotation on the subject at 82 A.L.R.2d 1218, provides better than any other source we have found an incisive analysis of the development and the proper function of what has become known as the doctrine of assumption of risk.
In that case, the New Jersey court limited its discussion to those cases in which the injury or damage was neither intended nor expressly contracted to be non-actionable. The court then observed that in the area which was left, the term assumption of risk had two distinct meanings. Thus, the court stated:
"... In one sense (sometimes called its `primary' sense), it is an alternate expression for the proposition that defendant was not negligent, i.e., either owed no duty or did not breach the duty owed. In its other sense (sometimes called `secondary'), assumption of risk is an affirmative defense to an established breach of duty. In its primary sense, it is accurate to say plaintiff assumed the risk whether or not he was `at fault,' for the truth thereby expressed in alternate terminolgy is that defendant was not negligent. But in its secondary sense, i.e., as an affirmative defense to an established breach of defendant's duty, it is incorrect to say plaintiff assumed the risk whether or not he was at fault."
In analyzing the distinction, the court first referred to the master-servant relationship which is the area in which the assumption of risk doctrine originally developed. If the servant chose to become employed in what was essentially an inherently dangerous type of work, he was said to have assumed the risk and could not recover if he were injured. The court pointed out that this was really another way of saying that the master was not negligent and that before the servant could recover he had to prove that the injury was caused by a risk other than the one inherent in a well-run establishment, to wit: that the master was negligent. The court called this assumption of risk in its primary sense. Another example given is where a passenger in a common carrier is thrown by the movement of the vehicle. If the movement is not unusual for that type of vehicle, it may be said that the passenger assumed the risk (in the primary sense) but, in fact, it is more accurate to say that under those circumstances the common carrier was not negligent. If, on the other hand, the passenger can prove an unusual (negligently created) jerk or jar, he will have proved negligence on the part of the defendant and the simple fact that he chose to ride on the vehicle should not bar his recovery.
The New Jersey court said that assumption of risk in its secondary sense was a mere phase of contributory negligence, holding that the total issue was whether a reasonably prudent man in the exercise of due care (a) would have incurred the *85 known risk, and (b) if he would, whether such a person in light of all of the circumstances, including the appreciated risk, would have conducted himself in the manner in which the plaintiff acted. Thus, the court stated that there was no reason to consider assumption of the risk in its secondary sense as something distinct from contributory negligence, and where the thought is projected in that aspect, the terminology of assumption of risk should not even be used. In summary, the court stated:
"In short, each case must be analyzed to determine whether the pivotal question goes to defendant's negligence or to plaintiff's contributory negligence. If the former, then what has been called assumption of risk is only a denial of breach of duty and the burden of proof is plaintiff's. If on the other hand assumption of risk is advanced to defeat a recovery despite a demonstrated breach of defendant's duty, then it constitutes the affirmative defense of contributory negligence and the burden of proof is upon defendant."
In the face of the long-established law in Florida on assumption of risk, we would not be in a position to embrace the reasoning of the New Jersey court absent Hoffman v. Jones. In many respects, Hoffman v. Jones, supra, was a social decision rather than a legal decision. It recognized the harshness of contributory negligence and concluded that a more just determination of controversies dictated the adoption of comparative negligence whereby the injured party is penalized only to the extent of his own fault. This decision points the way to the same conclusion with respect to assumption of risk. Since the circumstances which comprise contributory negligence are so similar to those which have heretofore been characterized as assumption of the risk in its secondary sense, it would be an anomaly to now hold that assumption of the risk is a total bar to recovery. If what Meistrich refers to assumption of the risk in its primary sense is now considered only in relationship to the breach of duty on the part of the defendant (to avoid confusion it would be preferable no longer to use the term, assumption of risk, in those words), there is no need for a separate affirmative defense. Thus, that defense which used to be known as assumption of risk in its secondary sense now merges with comparative negligence, and in those instances where reasonable men can differ, the finder of fact is entitled to consider all of the facts and circumstances in order to determine the extent to which the plaintiff may be at fault.
Since we hold that assumption of risk merges with comparative negligence and since the record does not affirmatively demonstrate that Hall was 100% negligent, the court erred in barring Hall from recovery as a matter of law on the theory of assumption of risk.
The summary judgment is reversed, and the case is remanded for further proceedings consistent herewith.
McNULTY, C.J., and SCHEB, J., concur.